Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of FANNIE A. UHL, Widow, Respondent, for Compensation to Herself and Child under the Workmen's Compensation Law, for the Death of HENRY UHL, v. THE HARTWOOD CLUB, Employer, and ÆTNA LIFE INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, March 7, 1917.

Workmen's Compensation Law — presumption as to validity of claim — right of membership corporation to become "employer" — liability for death of employee killed while cutting timber — when neither membership corporation nor insurance carrier can object that employment was ultra vires.

A claim is presumed to come within the provisions of the Workmen's Compensation Law.

The right of a country club, as a membership corporation or association, to become an "employer" in a hazardous employment is recognized by subdivisions 3 and 4 of section 3 of the Workmen's Compensation Law.

A membership corporation which has engaged in a hazardous business carried on by it for pecuniary gain cannot plead in defense of a claim for compensation of an employee injured in such employment that it had no right to engage therein, nor to employ the claimant. The fact that engaging in such employment was *ultra vires* furnishes no immunity either to the employer or insurance carrier.

An insurance carrier which has received and retained premiums upon a policy issued under the Workmen's Compensation Law in protection of a membership corporation operating as a country club, and of its employees, while engaged in the business of "forestry and logging," cannot object to payment of indemnity upon the ground that the club had no right to engage in said occupations for pecuniary gain.

WOODWARD and COCHRANE, JJ., dissented, with opinion.

APPEAL by the defendants, The Hartwood Club and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 17th day of July, 1916.

*James B. Henney* [*William H. Foster* of counsel], for the appellants.

*Egburt E. Woodbury, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* counsel to the State Industrial Commission, for the respondents.

LYON, J.:

The employer, the Hartwood Club, was a membership corporation organized in 1893 to acquire and maintain tracts of land, ponds and streams of water within this State as a fishing and hunting preserve, and as a pleasure resort for its members; to sell and convey to its members suitable sites for the erection of cottages, with suitable outbuildings; to erect and maintain a clubhouse and other suitable buildings in order to fit the preserve for the purposes of residence, recreation and social enjoyment, "and to do all things necessary for and incidental to the purposes above set forth." The constitution of the club provided for the sale and transfer of membership shares; for the forfeiture of membership rights; for the sale at public auction of the real and personal property of a forfeiting member, and for declaring dividends from any surplus revenues of the club.

The club became the owner of about 6,000 acres of land situated within the counties of Orange and Sullivan, in this State, a large part of which was covered with timber. From time to time the club sold from its woodland standing trees which were manufactured into lumber, and got out and sold railroad ties and telegraph poles. Trees also and down timber were cut by employees of the club and sold by it to the occupants of the cottages for firewood at a profit of about ten per cent above the cost of cutting. Cutting trees on this large tract was carried on a good part of the year, the club keeping two or three men at work at it most of the time. The receipts from the sales of firewood and timber, ties and telegraph poles went into the treasury of the club, and were expended in the upkeep of the property, and in rendering unnecessary or in reducing assessments upon the members for the general main-

tenance of the club property. The profits and other receipts from such sales might also under the constitution of the club be distributed to the members of the club as dividends.

In January, 1916, the husband of the claimant was an employee of the club as a general utility man and had been such for about four years. While engaged with two other club employees in cutting down trees he was killed by a falling tree, which had been felled by one of his fellow-workmen. The purpose for which the trees then being cut were to be used was not shown. The secretary of the club testified that it was impossible to tell the destination of any particular tree; that the trees were both loaded on wagons and cut into cordwood, "and they order up so many cars, and nobody can tell where any particular tree went to." Other evidence also indicates that some of the shipments of logs and cordwood were made by rail.

The insurance policy issued by the carrier stated the business of the employer as follows: "Country club, club-house and other buildings, grounds, hunting, fishing and pleasure resort, including ice harvesting, forestry and logging operations." Forestry is defined by Webster as "The art of forming or of cultivating forests; the management of growing timber." It would appear from the evidence that cutting timber was at times necessary to keep the woods in shape. The maintenance of the property of the club was within the declared purposes of the organization. Perhaps these trees were "going back" and good management required that they should be cut and sold while yet of value. The presumption is that the claim comes within the provisions of the Workmen's Compensation Law. (See Consol. Laws, chap. 67 [Laws of 1914, chap. 41], § 21.)

The State Industrial Commission found that on the day the deceased received his injuries he was employed as a lumberman by the Hartwood Club, a domestic corporation engaged in the operation of a country club, and in connection therewith in the business of ice harvesting, forestry and logging at Hartwood, N. Y., and that the club conducted such business for pecuniary gain. The Commission thereupon made an award in favor of the widow and child of the deceased. From such award this appeal has been taken.

The two grounds of appeal are: *First*, that deceased was not

engaged in a hazardous employment under the Workmen's Compensation Law, and, *second*, that the work was not being carried on for pecuniary gain.   The point is also made, which to an extent embraces the other two, that a membership corporation could not be an employer and the deceased an employee within the provisions of the Workmen's Compensation Law.   As to the first two grounds of appeal, the appellants base their right to a reversal of the award upon the cases of *Matter of Bargey* v. *Massaro Macaroni Co.* (218 N. Y. 410); *Matter of De La Gardelle* v. *Hampton Co.* (167 App. Div. 617), and *Matter of Mihm* v. *Hussey* (169 id. 742).   In neither the *Bargey* nor *Mihm* case was the occupation in which the employee was engaged at the time of sustaining the injury one carried on by his employer for pecuniary gain.   In the *De La Gardelle* case the employment was not one designated as hazardous under the Workmen's Compensation Law.   These authorities are, therefore, not applicable.

As to the last ground urged for reversal, while the Hartwood Club was a membership corporation, and hence not created for business purposes, its right as a corporation or association to become an employer, and of the deceased to become an employee in a hazardous employment, is recognized by the Workmen's Compensation Law (§ 3, subds. 3 and 4).*   While by the Membership Corporations Law (§ 40) a membership corporation may be created " for any lawful purpose, except a purpose for which a corporation may be created under any other article of this chapter, or any other general law than this chapter," I cannot believe that any membership corporation which sees fit to engage in a hazardous business, carried on by it for pecuniary gain, can be heard to plead in defense of the claim for compensation of an employee injured in such employment, that it had no legal right to engage in such employment, nor to employ its injured or deceased employee therein.   The fact that engaging in such occupation was *ultra vires* furnishes no immunity whatever, either to the employer or insurance carrier.   The Workmen's Compensation Law makes no such exemption in favor of either.

In the case of *Kenny* v. *Union Railway Company* (166 App.

* Since amd. by Laws of 1916, chap. 622.—[REP.

Div. 497) we held that the Workmen's Compensation Law does not exclude from its benefits employees who have obtained employment in violation of section 939 of the Penal Law, which provides that: "A person who obtains employment * * * by * * * aid * * * of any false statement in writing, as to his * * * previous employment * * *, is guilty of a misdemeanor."

In the case of *People ex rel. Coney Island Jockey Club* v. *Sohmer* (155 App. Div. 842; affd., 210 N. Y. 549) we held that where a corporation chose to avail itself of the advantages of having the title to land taken, held and conveyed by it, it was estopped to claim as against the State that it had no franchise authorizing it to deal in real property, and hence was not liable for the payment of franchise taxes.

In the case at bar the insurance carrier has received and retained the premiums upon a policy issued under the Workmen's Compensation Law in protection of the Hartwood Club and of its employees while engaged in the business of forestry and logging; that is, while engaged in a hazardous employment for pecuniary gain. (§ 2, group 14; § 3, subd. 5.) The insurance carrier cannot now be heard to say that it should not be called upon to make payment of the indemnity provided to be paid by the policy upon the ground that the club had no right to engage in those occupations for pecuniary gain.

It was held in the case of *Milborne* v. *Royal Benefit Society* (14 App. Div. 406) that where an incorporated benefit society assumes the risks and liabilities of a similar society and receives from a certificate holder of the latter all subsequent assessments necessary to keep his risk in force, it becomes liable to the certificate holder and is estopped from insisting that the contract by which it assumed the risks of the other society was *ultra vires* and that the certificate holder did not acquire any right as against it to enforce the obligation it had assumed.

It was held in the case of *Usher* v. *New York Central & Hudson R. R. R. Co.* (76 App. Div. 422; affd., 179 N. Y. 544) that where a division superintendent of the defendant acting beyond the scope of his authority, had made a contract with one of its employees who had been injured in the service of the company to employ him for life as a flagman at a certain cross-

ing, that the corporation when sued for a breach of the contract could not set up *ultra vires* as a defense to the action.

In view of the conclusions above reached I have not considered it necessary to discuss the question as to whether the Hartwood Club had in fact the legal right to do by virtue of its incorporation and incident to the exercise of its powers just what the Commission has found that in fact it did do.

The award of the State Industrial Commission should be affirmed.

All concurred, except WOODWARD, J., who dissented, in an opinion, in which COCHRANE, J., concurred.

WOODWARD, J. (dissenting):

I dissent on the ground that the Hartwood Club, a membership corporation, could not be an employer, and that Henry Uhl could not be an employee, under the definitions of the Workmen's Compensation Law (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], § 3, as amd. by Laws of 1914, chap. 316).* A membership corporation may be created "for any lawful purpose, except a purpose for which a corporation may be created under any other article of this chapter, or any other general law than this chapter" (Memb. Corp. Law [Consol. Laws, chap. 35; Laws of 1909, chap. 40], § 40), and as provision is made for corporations of a business character, under the various provisions of the general laws, it follows that a mem bership corporation is not created for a "trade, business or occupation" to be carried on "by the employer for pecuniary gain." This is peculiarly so when we remember that by the provisions of section 10 of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28) "no corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given;" and as there is no power given in the Membership Corporations Law to carry on any business for pecuniary gain the mere fact that the corporation may have cut and sold trees for lumber or cordwood does not bring it within the contemplation of the Workmen's Compensation Law. The purpose of this club was to purchase lands and adapt them to the purposes of cottage

---

* Since amd. by Laws of 1916, chap. 622.—[REP.

sites for members, and, as an incident to such purposes, it would be called upon to cut more or less timber, which might be sold and the revenues turned into the treasury to be used for the purposes of the club, but this was not for pecuniary gain, within the meaning of the Workmen's Compensation Law. This expression means a "trade, business or occupation carried on by the employer for pecuniary gain" — for profit — and not a mere incidental sale of timber for an agreed price.

The club in question had 6,000 acres of land and employed several men, just as an owner of a large farm with a wood lot might do, and the statute provides that it shall "not include farm laborers or domestic servants." The employer was not by law authorized to carry on any "trade, business or occupation" for "pecuniary gain," and it was not, therefore, within the law, any more than an individual would be who was maintaining a forest preserve for his personal pleasure, and who incidentally cut and sold timber from the tract in fitting and preserving it for the primary purpose. His employees would come within the classification of "farm laborers or domestic servants" rather than "employees" as defined in the Workmen's Compensation Law.

COCHRANE, J., concurred.

Award affirmed.

