PEERLESS COAL & COKE COMPANY *v.* STATE COMPENSATION COMMISSIONER

(No. 7383)

*and*

PEERLESS COAL & COKE COMPANY *v.* STATE COMPENSATION COMMISSIONER

(No. 7384)

Submitted September 28, 1932. Decided October 11, 1932.

*Strother, Sale, Curd & St. Clair,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

LIVELY, JUDGE:

The state compensation commissioner found upon investigation that Harold Lawson and Henry Thorn received fatal injuries while working in the mines of Peerless Coal & Coke Company. Applicants for compensation were denied on the ground that they were not dependents. No complaint is made of the finding of non-dependency. In the notice to the employer of his findings the commissioner advised it that a charge had been made against its record of $3,000.00 in the Harold Lawson case and $2,500.00 in the Henry Thorn case for rate-making purposes. The employer protested these findings, and upon further hearing the commissioner adhered to his former ruling. An "appeal" was granted in each case, upon the prayer of the petitions that the commissioner "be ordered and directed to eliminate all such charges as erroneous, unlawful and unwarranted."

It appears that Harold Lawson on January 6, 1931, was caught between a mine car and some timber and received a contusion over the front of his right hip joint and groin. He was immediately taken to a hospital where he remained, receiving treatment, until January 14th, when he was discharged as improved and able to go home. His lodging was at a boarding house which he reached about two P. M. of that day, when he complained of being cold and sick, and began vomiting. A physician was sent for and came the next day and found symptoms of influenza, and in a day or so Lawson developed pneumonia and died on January 20th. The commissioner found a causal connection between the injury and death upon the testimony of the physician and the circumstances, and we are not disposed to disturb that finding.

Henry Thorn received a fracture of left thigh about the "middle thirds" on October 12, 1929, while at work in the mine. He was treated at a hospital and later discharged therefrom with a vicious union of the bones, which rendered the leg useless. Upon later examination by the medical de-

partment of the compensation commission, he was sent to a hospital for an operation with a view to rehabilitation, in accordance with the authority given the commissioner by chapter 23, article 4, section 9, Code; and died under the operation (within a year from his injury), the immediate cause (in the opinion of the operating surgeon), being that a blood clot had formed and caused his death. The commissioner was justified in finding that Thorn came to his death as a result of his injury.

The issue involved on these "appeals" is whether the charges against the employer's account of $2,500.00 in the Thorn case, and $3,000.00 in the Lawson case are erroneous, unlawful and unwarranted under the statute. The decision of the issue calls for an interpretation of the statute.

Counsel for the commissioner argue that an appeal does not lie, and move for its dismissal. We have frequently held that the so-called appeal to this court in workmen's compensation cases is the invocation of our original jurisdiction, as mandamus, prohibition, and the like. This "appeal" is in the nature of a mandamus, for the petitioner asks that the commissioner be ordered and directed to eliminate from his orders the above items of charge against its account with the fund. Has petitioner a clear legal right to have these charges eliminated? In fixing rates for premiums, can the commissioner consider fatal injuries for which nothing is paid from the fund to dependents?

The main purpose of the compensation law is to make the risk of accidents to those of the industry and to follow from the fact of injury, and the compensation flowing therefrom an element in the cost of production, added to the cost of the article and borne by the ultimate consumers, the community in general. *Kenny v. Union Ry. Co.*, 152 N. Y. Supp. 117. Our law directs the commissioner to classify, or group, the industries subject to this statute according to the nature of the business and degree of hazard incident thereto. By section 4, article 2, chapter 23, Official Code, he is directed (1) to keep an accurate account of all moneys coming into the fund and of the liabilities incurred and disbursements made against the fund; (2) "an accurate account of all money or moneys received from each individual subscriber, and of the liability

incurred and disbursements made on account of injuries and death of the employee of each subscriber''; and (3) ''of the receipts and incurred liability of each group or class.'' These accounts directed to be kept are designed to show the condition of the fund as a whole, the status of each class or group as reflected by its receipts to the fund and its incurred liabilities; and the contribution of each individual subscriber to the fund on the one side of the account and the liabilities incurred and disbursements made on account of injuries and death of his employees, on the other side of the account. By these accounts, required to be kept accurately, the condition of the fund as a whole, may be ascertained, the condition of the fund of each class or group may appear, and the comparative relation of each individual subscriber as shown by his payments to the fund and the liabilities against it for accidents and death occurring in the conduct of his individual business. The statute directs that: ''In fatal cases * * * the amount charged against the employer's account shall be such sum as is estimated to be the average cost of such cases to the fund'', if the death was the result of injuries received in and resulting from the employment. (In these cases the charge of $3,000.00 for Lawson and $2,500.00 for Thorn was found to be the average costs of fatal cases to the fund at the respective dates of the death of each.) Whenever there is a fatal injury, the individual subscriber is directed to be charged with the average cost of such injuries to the fund, and not with the cost of that particular accident whether great or small. Each class must bear the burden of its fatal injuries. The costs of a fatal accident may be very large in some cases, negligible in others, and nothing in others, as in these cases. Yet the legislative scheme is that each subscriber of a class shall be charged with the average costs of all the fatal cases. No exception is made whether the costs to the fund be great, small, or nothing. It is upon the showing of these accounts that the commissioner is required to fix, at a stated period, lowest possible rates of premiums consistent with the maintenance of a solvent fund, and a reasonable surplus in each group after providing for payment to maturity of all liability incurred by reason of injury or death to employees. The rate of premiums to each subscriber of a group or a class is directed to be fixed from

the record of such group or class shown upon the books of the commissioner; and it is provided (the same section above cited) "that if any group has a sufficient number of employers with considerable difference in their degrees of hazard, the commissioner may fix a rate for each subscriber of such group, such rate to be based upon the subscriber's record on the books of the commissioner for the twelve months ending April thirtieth of the year in which the rate is to become effective; and the liability part of such record shall include such cases as have been acted upon by the commissioner during such twelve-months period irrespective of the date the injury was received", and if his record for the twelve months cannot be obtained, then upon his record for such part of such period as may be deemed just and equitable by the commissioner, "and the commissioner shall have authority to fix a reasonable minimum and maximum for any group to which this individual method of rating is applied, and to add to the rate determined from the subscriber's record such amount as may be necessary to liquidate any deficit in the schedule, or to create a reasonable surplus."

The above is the method provided for fixing individual rates for each year based upon the record showing of the subscriber for the previous year, or part of the year. The charges here involved were entered for "rate-making purposes". Whether they were charged to petitioner's account for individual rate-making purposes, or for rate-making purposes to the group to which subscriber belongs does not appear. Before an individual rate can be fixed in any group, it must appear that such group has a sufficient number of employers with considerable difference in their degrees of hazard. That situation does not affirmatively appear from the record in these cases. It must be remembered that this "appeal" is in the nature of a mandamus proceeding and the petitioner must show a clear legal right to have performed the act prayed for. Whether an individual rate will be fixed for petitioner at the future rate-making period, greater than the rate fixed for others of its group, thereby reflecting the items here involved, remains undetermined. The petition does not charge that such will be done. The ground upon which relief is sought is that because the fatally injured employees had no de-

pendents, and nothing was paid out of the fund for dependents, no charge against petitioner's account was warranted. The statute seems to make no distinction between fatal accidents burdensome to the fund and those not burdensome. It says that in fatal cases the employer's account shall be charged with the *average* cost of such cases to the fund. This is the legislative scheme for the formation of rates of premuims by which a solvent fund is maintained sufficient to pay all liabilities on it, including those arising from non-fatal cases and permanent disability cases under 85% disability, and to create a reasonable surplus in each group. Each subscriber is presumed to know the extent of the burdens imposed, as well as the benefits and protections afforded, by the Act. Whether the scheme of fixing the rate for premiums is *wise*, will not be determined by the courts. That is a question to be dealt with by the legislature.

The orders will be affirmed.

*Affirmed.*