The written charges were served on the accused on the 11th day of June, 1914, at 8 o'clock p. m. The hearing was fixed for the 12th of June, 1914, at 8 o'clock p. m. The determination to remove was made on the same day, and the written detailed reasons were filed in the city clerk's office the following morning. The relators asked for an adjournment to procure witnesses. They sought subpoenas. The mayor was not in the city during the greater part of the day of June 12th, and subpoenas could not be issued. The mayor, misapprehending the nature of the proceeding, proclaiming it to be a matter of good business and good government, and announcing that witnesses could not change matters within his own knowledge, denied the application, proceeded with the hearing, and removed the relators.

We think the accused were entitled to present their defense, and support it by witnesses whose attendance they should have had a reasonable time to procure by compulsory process, if necessary, so that the court, on review, could determine whether substantial cause for removal had been legitimately proved. See Matter of Reddy, supra.

The determination is annulled, and a new hearing directed, with $50 costs to the relators to abide the event. All concur.

---

(166 App. Div. 497)

KENNY v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, Third Department. March 3, 1915.)

1. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—COMPENSATION FOR DEATH — PROCURING EMPLOYMENT BY FALSE STATEMENTS — "EMPLOYER"—"EMPLOYÉ."

Under Workmen's Compensation Law (Consol. Laws, c. 67; Laws 1913, c. 816) § 3, defining "employer," as used in that act, as meaning a person, corporation, etc., employing workmen in hazardous employments, and "employé" as meaning a person engaged in a hazardous employment in the service of an employer, compensation was recoverable for the death of an employé engaged in a hazardous employment, though he procured the employment by means of a false statement in writing, within Penal Law (Consol. Laws, c. 40) § 939, making it a misdemeanor to so procure employment, the false representation having in no way related or contributed to the cause of death, as the right to compensation depends on the existence of the relation of employer and employé, and it does not matter whether the employment is under a valid contract, or under one voidable at the election of the employer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employer; Employé.]

2. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—COMPENSATION FOR DEATH—LIABILITY.

Where, under the Workmen's Compensation Law, an employer furnishes satisfactory proof to the Workmen's Compensation Commission of its financial ability to pay the required compensation, and deposits securities required by the Commission to secure its liability to pay such compensation, and thereupon becomes its own insurance carrier, it thereby obtains no immunity or exemption from liability for the payment of compensation, which would appertain to a stock corporation or mutual association, had it, instead of the employer, been the insurance carrier.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MASTER AND SERVANT ⬅➡250¾, New, vol. 16 Key-No. Series—WORKMEN'S
   COMPENSATION COMMISSION—REVIEW OF DECISIONS—NECESSITY OF EX-
   CEPTIONS.

    Under Workmen's Compensation Law, § 68, providing that the Work-
men's Compensation Commission, in conducting a hearing shall not be
bound by common-law or statutory rules of evidence, or by technical or
formal rules of procedure, except as therein provided, but that it may
make an investigation or inquiry, or conduct a hearing, in such manner
as to ascertain the substantial rights of the parties; section 20, providing
that, in making or denying an award, it shall make and file conclusions of
fact and rulings of law, and that its decision shall be final as to all ques-
tions of fact, and except as provided in section 23 as to all questions of
law; and section 23, authorizing appeals, and providing that appeals shall
be heard in a summary manner, and have precedence over all other civil
cases—exceptions to the Commission's findings of fact or conclusion of
law are not necessary to a review of its decisions, as the procedure is in-
tended to be simple and without unnecessary delay or useless formality,
and there is no statute or rule of court requiring the filing of exceptions
or the stating of the grounds of appeal in the notice of appeal.

Appeal from State Workmen's Compensation Commission.

In the matter of the claim of Elizabeth Kenny against the Union
Railway Company of New York City for compensation under the
Workmen's Compensation Law for the death of John J. Kenny. From
a decision and award of the State Workmen's Compensation Commis-
sion, the Railway Company appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

James L. Quackenbush, of New York City (John Montgomery, of
New York City, of counsel), for appellant employer and insurance
carrier.

Thomas J. O'Neill, of Yonkers, N. Y., for respondent Kenny.

Jeremiah F. Connor, of New York City, and Egbert E. Woodbury,
Atty. Gen. (Claude T. Dawes, Deputy Atty. Gen., of counsel), for re-
spondent State Workmen's Compensation Commission.

LYON, J. This is an appeal permitted by section 23 of the Work-
men's Compensation Law (Consol. Laws, c. 67; Laws of 1913, c. 816,
re-enacted and amended by Laws of 1914, c. 41, and amended by Laws
of 1914, c. 316) by the Union Railway Company from a decision and
award of the State Workmen's Compensation Commission, awarding
compensation to the widow and two children of John J. Kenny, de-
ceased.

[1] Deceased, who had been working for upwards of three months
as a conductor upon an electric street surface car of the Union Rail-
way Company, sustained accidental injuries September 21, 1914, re-
sulting in his death that day. The railway company, which was its
own insurance carrier, contested its liability to make payment of
the award upon the ground that the relation of employer and employé
did not exist between the company and deceased at the time of the
happening of the accident, for the reason that deceased had made
written application for employment by said railway company in May,
1914, by aid of which he had obtained employment, in which applica-

---

tion he had falsely and fraudulently stated, in violation of section 939 of the Penal Law, that he was unmarried and had not been employed on any railroad.   Concededly deceased, at the time of making such application, was married and had two children, and had been employed by the Yonkers Railroad Company as a conductor from January, 1912, until the spring of 1913, a period of about one year and two months, and had been discharged by that company for failure to ring up fares.   Section 939 of the Penal Law provided so far as material to be considered here, that:

"A person who obtains employment * * * by * * * aid * * * of any false statement in writing as to his * * * previous employment * * * is guilty of a misdemeanor."

The railway company conceded upon the hearing before the Commission that in employing men it made no distinction between married and single men, and that it would not have rejected deceased had he stated that he was a married man; but its counsel stated upon the trial that, had the company known the facts, it would most likely have rejected him for saying that he was single when he was married, and one of the superintendents of the railway company testified that it would not have employed deceased had it known that he had been employed by the Yonkers Railroad Company and discharged.

The counsel for the railway company offered in evidence applications claimed by said counsel to have been made by decedent to the Yonkers Railroad Company and to the Union Railway Company.   The examination made by the members of the Commission of the alleged signatures of decedent to both instruments, photographic copies of which applications are contained in the record, fully justified the doubt expressed by the chairman of the Commission as to the signatures having been made by the same man, and hence warranted the Commission in holding as matter of fact that the contestant had not satisfactorily established the making by decedent of the alleged application containing the false statements.   Such holding would of itself have justified the Commission in disregarding the objections made by the railway company to the allowance of compensation to the widow and children of deceased, and would have been conclusive. Passing this, however, and conceding that the false statements were in fact made by the deceased, we think the award should be confirmed.

There is no merit in the contention of the railway company that it was not an employer, and the deceased not an employé, within the meaning of the Workmen's Compensation Law, at the time he received the fatal injuries.   Section 3 of that statute defines employer and employé as follows:

"3. 'Employer' * * * means a * * * corporation, employing workmen in hazardous employments. * * *

"4. 'Employé' means a person who is engaged in a hazardous employment in the service of an employer."

Employment in the operation of an electric street railway is specified in the act as a hazardous employment.

While the relation of employer and employé as defined by the statute must have existed at the time deceased sustained the injury, it

matters not whether the employment was under a contract concededly valid as to both parties, or under a contract voidable at the election of the employer, or whether the liability of the employer for wages was fixed or determinable under quantum meruit. The vital question is whether the relation of employer and employé existed between deceased and the railway company; and, the facts being conceded, the question is one of law. Liability under section 939 of the Penal Law is based upon the fact of the person being in fact an employé, and having obtained employment by aid of the false statement. The Compensation Law does not except from its benefits employés who have obtained employment in violation of this provision of the Penal Law. The Compensation Law is not to be read into the contract of employment, as forming a part of it, and as dependent for its enforcement upon the validity of the contract of employment. Although making the false statements constituted a misdemeanor, they did not render the contract of employment void, but at most voidable at the election of the employer, which it at no time saw fit to exercise.

The false representations in no way related or contributed to the cause of death. The plain purpose of the statute was to provide compensation to an employé for an accidental personal injury, and to the family of an employé who has suffered death as the result of such injury sustained by the employé arising out of and in the course of such employment "without regard to fault as a cause of such injury," with the two specified exceptions of "where the injury is occasioned by the willful intention of the injured employé to bring about the injury or death of himself or another, or where the injury results wholly from the intoxication of the injured employé while on duty." Concededly the injury was wholly accidental, and neither exception applies.

In the case of Hart, Adm'x, v. N. Y. C. & H. R. R. R. Co., 205 N. Y. 317, 98 N. E. 493, which was an action brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by negligence attributable to defendant, deceased had obtained employment with defendant by falsely representing in writing that he was over 21 years of age, thereby evading a rule of the defendant forbidding the employment of minors. While misrepresentation as to age was not punishable under section 939 of the Penal Law, nevertheless the plaintiff obtained the employment in which he was injured, by means of such false representation.

The court held that, while the misrepresentation of the deceased affected the contract of employment in the sense that it made it voidable, it did not affect the relation of master and servant with respect to the former's obligation under the statute respecting the safety of persons serving it. "Notwithstanding that the deceased by his misrepresentation evaded the rule of the defendant forbidding the employment of minors, he was actually in its service, and therefore was entitled to the protection of an employé accorded by the law." In the case of Galveston, H. & S. Ry. Co. v. Harris, 48 Tex. Civ. App. 434, 107 S. W. 108, it was held that the fact that a brakeman falsely stated in securing his position that he had never had any litigation with the railroad company, while ground for the rescission of his contract, did

not render such contract absolutely void, or terminate the relation of master and servant existing at the time of the injury.

[2] The Union Railway Company was its own "insurance carrier," having furnished satisfactory proof to the Commission of its financial ability to pay the required compensation, and having deposited the securities required by the Commission to secure its liability to pay the same. However it thereby obtained no immunity or exemption from liability for the payment of compensation which would appertain to a stock corporation or mutual association, had it, instead of the railway company, been the insurance carrier.

The action of the Commission in this case is consistent with the general scope of the Workmen's Compensation Law as recommended in the able and exhaustive report of the Wainwright Commission made to the Legislature of 1910 upon which the act was founded. The plain purpose of the statute was to make the risk of accident one of the industry itself, to follow from the fact of the injury, and hence that compensation on account thereof should be treated as an element in the cost of production, added to the cost of the article and borne by the community in general. That the statute might be general in its scope, provision was made to provide compensation for every accidental personal injury to an employé arising out of and in the course of such employment, with the two exceptions before specified.

[3] The respondent contends, however, that in order properly to have brought the decision of the Commission before us for review, the appellant should have filed exceptions to the findings of fact or conclusions of law. This was not necessary. The act provides (section 68) that the Commission in conducting a hearing shall not be bound by common law or statutory rules of evidence, or by technical or formal rules of procedure, except as in the act provided, but that the Commission may make such investigation, or inquiry, or conduct the hearing in such manner as to ascertain the substantial rights of the parties; that (section 20) in making or denying an award the Commission shall make and file a statement of its conclusions of fact and rulings of law; that the decision of the Commission shall be final as to all questions of fact, and except in case of appeal to this court, final as to all questions of law; and that (section 23) such appeal shall be heard in a summary manner, and shall have precedence in this court over all other cases. There is no provision of the statute or rule of this court requiring the filing of exceptions, or as in England and in some of the states, that the grounds of appeal be stated in the notice of appeal; but it was intended that the procedure both before the Commission and in this court should be simple and without unnecessary delay or useless formality, and that until otherwise provided the appeal to this court should bring up the whole case, to be heard upon the record of the Commission and the briefs and arguments submitted by the respective parties.

The decision and award of the Commission should be affirmed. All concur.