**BLACK, SIVALLS & BRYSON, INC.,**
a corporation, Petitioner,

v.

Reams E. COLEY and State Industrial Court,
Respondents.

No. 39671.

Supreme Court of Oklahoma.

Jan. 9, 1962.

Withington, Shirk, Nichols & Work, by W. R. Withington, Oklahoma City, and E. P. Ledbetter, Oklahoma City, of counsel, for petitioner.

Judd L. Black, Oklahoma City, for respondent.

**JOHNSON, Justice.**

Claimant sought compensation for disability occasioned by two separate episodes of myocardial infarction. The first of these onsets occurred on November 27, 1959, and the second on October 27, 1960. The claims were instituted on November 8, 1960. By agreement of counsel the cases were consolidated for hearing and disposition. The proceedings resulted in an award for permanent total disability. On review in this action employer advances two principal propositions: (a) claimant's cardiac condition was not attributable to any work-connected injuries; (b) there was error in the trial tribunal's finding that employer "had actual knowledge" of the first heart attack and was not prejudiced by claimant's failure to impart statutory written notice thereof.

Claimant, a laborer 59 years of age, had been in continuous service of the employer for some thirteen years. He was assigned to the pipe assembly department of employer's plant and had worked there for about six months next preceding his first onset. His duties consisted of "feeding" pipe into an electrically propelled bending machine. The machine was mounted upon a long table, approximately three and one-half feet above the floor level, and was manned by two workmen. Claimant worked at the "tail-end" of the pipe, and his fellow employee operated a push-button control switch. The pipe to be bent lay in racks or on the floor whence it was carried first onto the "horses" and then upon the machine table. A monorail travelling crane was available for this purpose, but, oftentimes, when the crane was being used or needed in other departments, the two workmen would have to lift each section manually. After processing is completed, the pipe is lifted from the machine and laid on the floor to be welded into coils. In mounting the material on the machine, claimant had to effect passage of the pipe over the "mandrel rod head." The size of the "head" is always a fraction of an inch smaller than the inside diameter of the pipe. This task, according to claimant's testimony, was an arduous one, especially when the inside walls of the particular section were rough, corroded, "uneven-sized," or filled with some foreign substance.

On November 27, 1959, claimant came to work at seven o'clock in the morning. The work order on this occasion called for bending of four-inch, extra heavy pipe which was in twenty foot sections weighing about

300 pounds per length. Claimant testified "that (was) about the largest order we had had there * * * for some time, since I have been working up there." The pipe was filled with "rust or dirt" or had small uneven places, and it required an *awful lot of exertion to get it on*, raise the weight of that pipe * * * sometimes some of the mandrel rod with it, if you raise it too high, and *pushing it on, shoving, straining, to try to get it on to the mandrel (head) to where a bend is."* While engaged in this operation claimant experienced, "in the neighborhood of eleven o'clock," a severe pain "right in the chest and heart." When he told the co-worker about his plight, they stopped to rest some fifteen or twenty minutes. After a while the pain "eased up," and the men resumed working. At noon claimant ate a light lunch. Shortly after he returned to work the pain became so severe that claimant was unable to continue. He reported his condition to the foreman, first aid nurse and the employment manager and left for home whence he was taken to a doctor and later to the hospital. Upon his dismissal from treatment, about the middle of April or in the forepart of May, he took a three-week vacation and then returned to the same employment at the plant.

On October 27, 1960, claimant assisted in bending two coils from twenty-foot sections of four-inch extra heavy pipe. The work order called for immediate delivery. According to the claimant, "we was in a kind of a hurry that morning, they was waiting on the coils; and we worked like—very fast, and picking up the pipe from off the horses and pushing them on to the mandrel, and we didn't have so many awful bad pipe that morning; but we had, I think, three * * * or four bad pipe; and the picking up and pushing and straining that morning." In the afternoon he helped bend coils from twenty-foot sections of extra heavy two-inch pipe. Although he experienced an onset of some pain while still at work, he took several sublingual nitro glycerin tablets and "managed to make the day." At midnight, he suffered a second episode of myocardial infarction.

■ As reflected by the expert opinion of Dr. J., claimant's first onset "was directly related to and precipitated by the stress and strain incidental to the work * * * (he) had performed on that day"; because the scar from the first injury had not "completely healed" when claimant resumed work, he was particularly vulnerable to another episode of exertion; even though the activity on October 27 was "more normal and usual," it was nonetheless "strenuous and stressful" in view of claimant's previous incapacity. Dr. J. concluded that both of the episodes of myocardial infarction were produced by work-connected stress and strain. When asked on cross-examination to assume a set of facts more compatible with the employer's version of the working conditions in existence at the time of the incidents in question, the doctor refused to change his opinion as to causation. We therefore find no basis for employer's assertion that Dr. J. based his testimony on an inaccurate or incomplete history within the meaning of our decision in Acme Flour Mills v. Bray, 185 Okl. 516, 94 P.2d 828. See in this connection United Brick & Tile Company v. Roy, Okl., 356 P.2d 107; Ideal Cement Co. v. Buckler, Okl., 353 P.2d 828, and Boardman Company v. Eddy, Okl., 363 P.2d 821, 823.

■ The pattern of proof necessary to show an accidental injury from work-connected strain consists of two essential elements: (a) lay testimony as to the nature of labor performed by the workmen when injured; (b) expert opinion that the exertion attendant upon such physical activity as shown was sufficient in degree to, and did in fact, produce the strain to which disability is sought to be attributed. Once these evidentiary components are supplied, the factum of an accidental injury from strain stands established. Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741, 744.

■ As reflected by the argument and some objections made in the record, counsel for the employer were laboring under an erroneous conception of the rule and believed that the degree of work-connected

strain was a pure matter of law which could not be usurped or invaded by the expert opinion of a physician. We have held to the contrary. In Farmers Cooperative Ass'n v. Madden, supra, page 744, it is stated:

"Whether exertion from a particular physical effort engaged in by the injured workman was sufficient in degree to produce, and did in fact produce, the strain which culminated in his disability, does not present a question of law, but one of fact to be determined by the trial tribunal from expert medical opinion based on relevant facts and circumstances adduced by the proof."

The impact of a strain develops from an inter-play of a multitude of variable factors which depend largely on the individual reaction of a given human organism to the physical forces in action. Strain is not a concept reducible to some precise legal dimension, but must be viewed in conjunction with expert testimony by which a given pathology is sought to be attributed to the particular episode of physical effort. See Sinclair Oil & Gas Company v. Cheatwood, Okl., 350 P.2d 944, 947.

■ Measured by this rule, we conclude that the evidence adduced in this cause amply met the standard of proof necessary to establish the factum of a heart injury from physical strain.

■ Neither can we agree that there was error in excusing claimant's failure to give written notice of his injury as provided in 85 O.S.Supp.1959, § 24. The trial tribunal found that employer had actual knowledge of the injury and was not prejudiced by the failure to receive written notice thereof.

The evidence discloses without substantial dispute that before leaving the plant on November 27, 1959, claimant did report his condition to the foreman, a fellow employee, the infirmary nurse and to the employment manager. According to the record, the latter official of the company acquired sufficient knowledge of the symptoms complained of to immediately conclude that claimant must have suffered a heart attack.

It is also admitted that within two weeks from the injury claimant's wife telephoned the employment manager and informed him of claimant's heart attack.

■ Employer's chief argument, as we view it, is not based on its asserted lack of knowledge that claimant had suffered a heart attack, but on its unawareness that claimant would assert his injury as compensable under the Act. The law does not impose a duty upon the workman to declare within thirty days after the injury his intention to proceed with a claim for compensation. Rather, the function of notice is to enable the employer to timely initiate his own investigation as to the possible compensability of the reported injury and the necessity for prompt medical treatment. Jones v. Oliver, 204 Okl. 164, 228 P.2d 173; Gulf Oil Corporation v. Kincannon, 203 Okl. 95, 218 P.2d 625. Since the only defense asserted to the claim, aside from the issue of notice, was that the heart attack did not arise out of employment, employer would have doubtless denied its liability and declined to furnish medical treatment. even if written notice had been given.

■ There is competent evidence in the record to show that employer had actual and timely knowledge of the injury and was afforded an opportunity to make an immediate investigation of the accident with the view of determining all the necessary facts. We find no error in the finding that employer was not prejudiced by want of written notice of the first heart attack. As the claim for the heart attack of October 27, 1960, was filed within thirty days from its occurrence, there can be no issue of notice as to the second injury.

■ Most, if not all, arguments advanced in employer's brief are directed to the *weight* of the evidence. Our sole concern is whether there is *any competent evidence* to support the award. By force of statute the scope of our examination on review is limited to errors of law. This court may not undertake a re-determination of disputed fact questions which the trial tribunal resolved from competent evidence elicited by

the adversary parties. 85 O.S.1951 § 26; In re Greer, Okl., 356 P.2d 356, 359; Fullhart Maytag Company v. Stapleton, Okl., 356 P.2d 350, 353.

The proceeding is free from errors of law and the trial tribunal's findings rest on competent evidence. The award is accordingly sustained.