2005 OK 30

**PAULS VALLEY TRAVEL CENTER and Compsource Oklahoma, Petitioners,**

v.

**Stephany Maurine BOUCHER and the Workers' Compensation Court, Respondents.**

No. 100,169.

Supreme Court of Oklahoma.

May 3, 2005.

H. Lee Endicott, III, and Donald A. Bullard, Bullard & Hoehner, P.C., Oklahoma City, for Petitioner.

John Sprowls, Pauls Valley, OK, for Respondent.[1]

OPALA, J.

¶ 1 The broader question presented for our review is whether the Court of Civil Appeals (COCA) failed to apply the proper standard of review when it vacated the three-judge panel's award for medical treatment and compensation. The narrow issue before us is whether the trial tribunal's order—that claimant's injury was not idiopathic but compensable because it arose out of her employment—is supported by competent evidence.

## I.

### ANATOMY OF THE LITIGATION

¶ 2 The facts are uncontested. Stephany Maurine Boucher (claimant or Boucher), a

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

cashier[2] employed by the Pauls Valley Travel Center (collectively with Compsource, the insurer, to be known as employer), pressed below two separate work-related injuries to her right knee. The first incident occurred in December of 2002 when she slipped on some grease while walking to the back of the store to place a recently-received gift with other personal belongings. Claimant did not fall but experienced some pain and swelling in her right knee. She did not seek medical attention, nor did she miss any time from work as a result of this injury. On 1 May 2003, Boucher was walking toward the cash register to serve customers when her right knee "gave way."[3] She testified she was then walking a straight path, was not carrying anything, and encountered no obstacles. She did not slip, nor did she exert any undue physical effort. Although Boucher did not fall, because of ensuing severe pain in her right knee she secured emergency medical care. She sought compensation for temporary total disability and medical treatment. Employer denies claimant's injury was job-related.

¶ 3 Boucher—the sole witness at the hearing—testified she had a non-work related injury to the same knee in 1999 (a possible internal derangement).[4] Her cross-examination testimony is confusing as to whether she periodically encountered problems with that knee after the 1999 injury.[5] Two medical reports were offered in evidence. Dr. H's report (offered by employer and claimant) included Boucher's history of her knee injury in 2002 as well as that of the May 2003 re-injury. He gives as his diagnosis a likely bucket handle tear of the medial meniscus with a locked knee.[6] He believes she needed further medical treatment and evaluates her work status as temporarily totally disabled. The medical report of Dr. E (offered solely by claimant) referenced all three knee injuries and included Boucher's complaint that her right leg gave way causing the right knee to twist. The report includes a diagnosis of her injury as a strain of the right knee, a probable internal derangement. Dr. E concludes the injury was causally connected to Boucher's accident.[7] Although employer in-

2. Claimant also performed customer service and cleaning duties.

3. Trial transcript p. 10.

4. Trial transcript p. 16.

5. Claimant's testimony dealing with her three knee injuries is somewhat confusing.

* * * "Q. During any point in time after that incident did you notice any kind of weakness at all in your right knee?

A. Which incident?

Q. After the one in '99?

A. Did I notice any weakness after the—no. Not until—not until the December of 2002 accident." * * * Trial transcript, p. 16.

"Q. All right Well, at Page 24—

A. From December of '99 until May 1st, yes, I had problems with it every now and then. I also stated in there that Tina, which is the lady I work with, knew about it bothering me, and that also Dorothy Coon knew about it bothering me.

Q. All right. Just to clarify, the question was asked about the date in December, and you said it occurred on December 9th. And then going on at Page 24, Line 1, you responded, 'It hurt for a couple of days, but then after that it was fine and I didn't think anything about it. The lady that I worked with, she seen it. She talked to me about it. And then after that I hurt it again on May 1st.'

So now you are saying that—you're saying that you did continue to have problems after that incident?

A. After, yes." * * * Trial transcript p. 17.

Claimant's testimony dealing with all of the knee incidents conflicts somewhat with her deposition answers and with the emergency room reports submitted in evidence. The Paul's Valley General Hospital Emergency Department Record (offered by both parties) shows that claimant related a two-year history of knee problems. On cross-examination claimant denied she reported a two-year history of knee pain.

The Norman Regional Hospital Emergency Department Record (offered by both parties) reveals claimant reported an injury three years ago that healed on its own but does not reference the alleged 2002 on-the-job injury. On cross-examination claimant stated she did inform the hospital and the doctor about the December, 2002 incident.

6. Dr. H's medical report shows he believes claimant "has sustained an anterior cruciate ligament tear of her right knee and now has probably a displaced bucket handle tear of the medical meniscus and a locked knee from this." His report reveals claimant related some slipping episodes, and on 1 May 2003 she re-injured her knee. Report of Dr. H.

7. Dr. E reported, "[i]n my opinion, this injury arose out of and in the course of the employee's

terposed a probative-value objection to this report (on the grounds that it was insufficient to show the claimant's second injury arose out of her employment), the report was admitted in evidence.[8]

¶ 4 The trial judge found 1) the first incident not to be compensable because the worker was on a personal mission [9] but 2) the second injury, which was not occasioned by idiopathic harm, is compensable. Employer sought intra-court review. A three-judge panel of the WCC sustained the trial judge's order.[10] Employer then sought further review in the appellate courts.

¶ 5 Employer challenged, as unsupported by competent proof, the trial tribunal's finding that Boucher's injury was not the result of an idiopathic condition and that it arose out of her employment. Employer asserts there was no evidence to show that claimant's injury was anything else than an idiopathic episode.[11] Because the facts were deemed uncontested COCA reviewed the dispositive question as one of law, applying the *de novo* standard of review. It determined that Boucher's knee event was spontaneous and there was no work-related risk factor

that contributed to, or occasioned, claimant's injury. COCA vacated the panel's order, holding Boucher's injury was, as a matter of law, solely the result of an idiopathic condition which makes it noncompensable.[12] Claimant now seeks certiorari review.

## II.

## STANDARD OF REVIEW

¶ 6 Whether an injury arises out of and in the course of a claimant's employment presents a question of fact to be determined by the trial judge.[13] Where there is no conflict in the evidence (and no opposite inferences may be drawn from undisputed proof),[14] the question is one of law.[15] The trial judge's non-jurisdictional findings may not be disturbed on review if supported by competent proof.[16] Record proof, on the basis of which the trier could have reached a contrary conclusion, has no legal impact upon the review process by which a workers' compensation court's finding is tested.[17] It is only the absence of competent evidence that makes the tribunal's decision erroneous (as a

---

employment with the above employer and is causally connected to the above described accident." Report of Dr. E, p. 3.

8. The record reveals that although Dr. E's report was admitted in evidence, its weight and credibility was to be considered at the decisional stage.

9. *Claimant did not seek review of this ruling and it is not here for review.*

10. A scrivener's error in the trial judge's order was corrected by the panel.

11. Employer urges claimant failed to offer evidence of an employment-related strain that caused her injury; rather, her testimony and evidence confirmed her injury occurred because her knee simply gave way. Neither did she offer proof that the injury resulted from an employment-related hazard that occurred because of an antecedent idiopathic episode. Claimant responds 1) no evidence was offered that shows her injury was idiopathic in nature and not the result of walking—a risk factor peculiar to her employment and 2) even if her injury were the result of an idiopathic condition it was still compensable.

12. COCA's opinion cites to *Flanner v. Tulsa Public Schools*, 2002 OK 8, ¶ 7, 41 P.3d 972, 974, for

the proposition that where an idiopathic condition is the sole cause of an employee's harm, and no other factor operates to contribute to the injury, no compensation may be awarded.

13. *Corbett v. Express Personnel*, 1997 OK 40, ¶ 11, 936 P.2d 932, 935; *Thomas v. Keith Hensel Optical Labs* 1982 OK 120, ¶ 7, 653 P.2d 201, 203; *American Management Systems, Inc. v. Burns*, 1995 OK 58, ¶ 6, 903 P.2d 288, 291.

14. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, ¶ 6, 958 P.2d 795, 798 (citing *Thomas, supra* note 13, at ¶ 7, at 203).

15. *Lanman, supra* note 14, at ¶ 6, at 798 (citing *Liebmann Arctic Ice Co. v. Henderson* 1971 OK 35, ¶ 3, 486 P.2d 739, 740).

16. Controlling provisions of 85 O.S.2001 § 26 clearly state that "[t]he decision of the Court [Workers' Compensation Court] shall be final as to all questions of fact, and except as provided in ... [§ 3.6], as to all questions of law."

17. *Lanman, supra* note 14, at ¶ 6, at 798 (citing *Iwunoh v. Maremont Corp.*, 1984 OK 8, ¶ 4, 692 P.2d 548, 549; *Matter of Death of Sade*, 1982 OK 91, ¶ 5, 649 P.2d 538, 540).

matter of law) and hence amenable to appellate vacation.[18]

## III.

### A.

#### ARGUMENTS ON CERTIORARI

¶ 7 Boucher's certiorari petition urges 1) COCA's ruling violates the applicable review standard because there was competent evidence to support the trial judge's order that her injury was not the result of idiopathic harm, 2) there was no evidence that her injury resulted from an idiopathic condition; on the contrary, the proof indicates it resulted from on-the-job walking—a risk factor peculiar to her employment,[19] and 3) even if the injury were occasioned by idiopathic harm it is nonetheless compensable.[20]

¶ 8 Employer responds COCA's ruling was correct because the record is devoid of evidence that claimant's knee injury was anything other than an idiopathic episode.[21] Employer urges claimant failed to offer evidence of an employment-related strain that caused her injury; rather, her testimony and other evidence confirms her injury occurred because her knee simply gave way. Neither did she offer proof her injury resulted from an employment-related hazard that increased the risk of injury from an idiopathic harm. In short, employer insists claimant's injury

was clearly the result of an idiopathic harm, unrelated to the risk of her employment.

### B.

#### CLAIMANT'S KNEE STRAIN IS IPSO FACTO AN ON-THE-JOB INJURY. EMPLOYER FAILED TO REFUTE THE CAUSAL NEXUS, ESTABLISHED BY CLAIMANT'S EVIDENCE, THAT HER INJURY WAS NOT THE RESULT OF AN IDIOPATHIC EPISODE.

¶ 9 A compensation claimant must satisfy a two-pronged statutory test by evidentiary showing that the bodily injuries for which benefits are sought 1) occurred "in the course of" the employment[22] and 2) "arose out of" the employment.[23] These elements are separate and distinct. Both must be established before recovery may be allowed. Not all injuries that occur on the job are compensable. This is so because a connection must be shown between the conditions of one's employment and the encountered causative risk that resulted in the worker's harm. Risks not reasonably connected with the claimant's work—those which are purely personal—are not compensable if they constitute the sole cause of the employee's injury.[24]

¶ 10 Neither party suggests that implicated here is the first prong of the statuto-

---

**18.** *Lanman, supra* note 14, at ¶ 6, at 798 (citing *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 549–52).

**19.** " 'Injury' or 'personal injury' means only accidental injuries *arising out of and in the course of employment* ..." * * *(emphasis added) 85 O.S. 2001 § 3(12)(a).

**20.** This is so because walking, even if generally deemed a neutral risk, was here a hazard peculiar to her employment. Claimant cites *Halliburton v. Alexander*, 1976 OK 16, 547 P.2d 958, for the proposition that where employment contributes to an employee's risk or aggravates a pre-existing weakness the injury is compensable.

**21.** Employer also contends the trial tribunal's order is facially defective. This is so because it provides the claimant's "knee gave out while [she was] stepping up to a register to wait on a customer." No evidence was produced that indicates the event took place other than on a level floor. Although COCA did not address the issue

on appeal, this wording does not make the order fatally defective. We assume the trial judge's order merely indicates claimant was stepping toward the cash register at the time the injury occurred.

**22.** The term "in the course of employment" relates to the time, place or circumstances under which the injury is sustained. *Corbett, supra* note 13, at ¶ 7, at 933–34 n. 2; *Thomas, supra* note 13, at ¶ 4, at 202; *R.J. Allison v. Boling*, 1943 OK 43, ¶ 4, 134 P.2d 980, 982, 192 Okl. 213.

**23.** The term "arise out of employment" contemplates the causal connection between the injury and the risks incident to employment. *Thomas, supra* note 13, at ¶ 4, at 202; *Richey v. Commander Mills, Inc.*, 1974 OK 47, ¶ 13, 521 P.2d 805, 808; *Graham v. Graham*, 1964 OK 68, ¶ 5, 390 P.2d 892, 893.

**24.** *Flanner, supra* note 12, at ¶ 7, at 974.

ry test—that which requires the injury to have been "in the course of employment." Today's certiorari deals solely with the second prong's requirement of compensation law's evidentiary pattern—**whether claimant's injury arose out of her employment.** To establish that an injury occurring on the job arose out of employment, a claimant must show 1) the nature of the work performed at the time of the injury, which may be established by lay testimony, and 2) a nexus between the work activity and the harm for which compensation is sought. The latter must be established by expert medical opinion.[25]

 ¶ 11 Harm suffered by a worker, which consists of a strain, constitutes an accidental injury if it occurred while one was going about one's work performance in the usual and ordinary manner though nothing unusual occurred to · cause the strain.[26] *Strain and exertion arising out of and in the* course of employment constitutes ipso facto an accidental injury.[27] In short, the strain stands recognized as one's accidental injury.[28] A claimant with a pre-existing disease or infirmity may experience an internal injury of a sudden, unusual and unexpected nature which will nevertheless be deemed accidental in character, although its external cause is attributable to ordinary work performed in a usual manner and without any connected untoward movement.[29]

 ¶ 12 Whether exertion from a worker's physical effort is sufficient to produce, and did in fact produce, the strain which culminated in disability, does not present a question of law, but one of fact to be determined by the trial tribunal from expert medical opinion based on relevant facts and circumstances adduced by the proof.[30] Through her testimony and the medical report of Dr. E, Boucher has met the burden cast on her by the law's imposed pattern of

25. *Hughes v. Cole Grain Co.*, 1998 OK 76, ¶ 6, 964 P.2d 206, 208.

26. *Ben Hur Coal Co. v. Orum*, 1961 OK 303, ¶ 9, 366 P.2d 919, 920 (citing *Liberty Glass Co. v. Guinn*, 1953 OK 362, ¶ 13, 265 P.2d 493, 495 and *Gulf Oil Corp. v. Rouse*, 1949 OK 205, ¶ 7, 214 P.2d 251, 253).
 Today's cause is factually similar to that of *Phillips Pipe Line Co., v. Hardy Brown*, 1956 OK 188, ¶ 6, 301 P.2d 689, 690. There a claimant who strained his back as he stepped from a motor vehicle while in defendant's employ was held to have sustained an accidental injury arising out of and in the course of employment. *Phillips, supra. Phillips* distinguishes factual situations dealing with strain-induced injury from those where there is no evidence of strain that caused the disability and are hence noncompensable. *Phillips, supra*, at ¶ 8 at 690. Oklahoma's extant jurisprudence is replete with compensation law's recognition of strain-induced workers' injuries. See *Safeway Stores v. Simons*, 1958 OK 260, ¶ 17, 331 P.2d 934, 937 (claimant who sustained a dislocated shoulder while reaching beneath a counter to pull out a meat tray while on the job sustained a work-related injury); *Acme Material Co. v. Wheeler*, 1954 OK 361, ¶ 13, 278 P.2d 234, 238 (employee suffered a work-related injury while operating a diesel shovel); *Evans–Wallower Lead Co. v. Dry*, 1936 OK 543, ¶ 6, 61 P.2d 561, 178 Okl. 48 (employee who sprained his back while lifting a lever to adjust a pulley belt sustained a work-related injury); *Guinn, supra*, at 13 at 495 (employee who strained her back from lifting and placing bottles on a conveyor belt suffered an on-the-job injury). Past compensation jurisprudence also supports benefits for heart-related injuries or death where antecedent strain or exertion arising out of and in the course of employment is either the sole or a contributing cause of pathology. See *Young v. Neely*, 1960 OK 129, ¶ 9, 353 P.2d 111, 113; *Refrigerated Transport Inc. v. Creek*, 1979 OK 11, ¶ 19, 590 P.2d 197, 200; *Gulf Oil Corp. v. Harris*, 1967 OK 22, ¶ 10, 425 P.2d 957, 962; *H.J. Jeffries Truck Line v. Grisham*, 1964 OK 242, ¶¶ 6 and 10, 397 P.2d 637, 640; *Orum, supra.*

27. *Neely, supra* note 26, at ¶ 9, at 113 (citing *Choctaw County v. Bateman*, 1952 OK 387, ¶ 18, 252 P.2d 465, 468–69, 208 Okl. 16).
 "[T]he term accidental injury is not to be given a narrow or restricted meaning, but is to receive broad and liberal construction ... An 'accident' is an event happening without any human agency, or · if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens." *Bateman, supra* note 27, at ¶ 9, at 469.

28. *Bateman, supra* note 27, at ¶ 18, at 468–69; *Guinn, supra* note 26, at ¶ 13, at 495.

29. Internal injury produced by work-connected strain or exertion is accidental in character. *Grisham, supra* note 26, at ¶¶ 6 and 10, at 640 (citing *Kelley v. Enid Terminal Elevators*, 1962 OK 141, ¶¶ 10–11, 372 P.2d 589, 592 and *Orum, supra* note 26, at ¶ 9, at 920).

30. *Grisham, supra* note 26, at ¶ 8, at 640 (citing *Black, Sivalls & Bryson, Inc., v. Coley*, 1962 OK 2, ¶ 7, 367 P.2d 1017 at 1020).

proof. Walking is one among many hazards in the employment-related cluster of on-the-job activities, just as is moving one's hands, back or legs is related to work performance. That walking was incidental to her work as a cashier is established by Boucher's testimony. Dr. E diagnoses Boucher's injury as a knee strain which he opines is causally connected to claimant's accidental event. In short, claimant's testimony and other evidence, though perhaps appearing meager to a casual reader, clearly and fully meet the quantum of proof necessary to establish the *factum* of an accidental injury by strain.

¶ 13 Once claimant has established that injury arose out of employment, the burden shifts to the employer to refute work-related causation. Proof of an idiopathic harm that caused the injury is a liability-defeating defense: a mere legal conclusion of injury from an idiopathic condition will not suffice. Employer has not made here the required showing. Dr. H's report provides a diagnosis of claimant's injury but offers no opinion as to its cause.[31] Neither did employer show any risks extraneous to Boucher's employment that might have been the cause of her injury. The record is barren of evidence that would counter claimant's proof. Where claimant has met her burden and there is no competent evidence in the record to refute compensable causation, a trial judge's determination that the injury arose out of and in the course of employment must be sustained.[32] Because there is here competent evidence in the record to sustain the trial judge's findings, and employer proffered no proof that counters the causal nexus, we are compelled to sustain the trial tribunal's order.[33]

¶ 14 From early tort teachings the compensation law has borrowed the notion that an employer takes a worker as it finds him, including all of his bodily flaws. *Yet a distinction is to be made between one's proneness toward a particular injury and one's injury solely from an idiopathic episode.* Compensation law treats the two situations differently—the former is deemed compensable but not the latter. Proneness is not synonymous with idiopathy. An idiopathic condition is internal. It spontaneously precipitates a worker's injury.[34] Proneness, on the other hand, means that one is predisposed toward a particular occurrence.[35] To produce harm, proneness requires that external forces be at work in conjunction with its presence. An examination of an injury's genesis helps keep the distinction clear. Where an untoward movement (or some other "normal" external force) co-operates in producing the injury, the resulting harm cannot be said to be idiopathic in origin. Here, claimant's knee did not give way spontaneously; rather, an untoward step precipitated the harm that ensued. *Even if employer did establish Boucher's proneness to injure herself because of a pre-existing defect, it does not follow, as a matter of law, that her on-the-job injury stems solely from idiopathic harm that is not compensable.*

¶ 15 There is competent evidence to support the trial tribunal's order. COCA's analytical scheme presses its review of the record far beyond the boundary line drawn by the standard of review allowed by law for appellate-court re-examination of the trial tribunal's findings.[36]

---

31. See *supra* note 6 for the diagnosis made by Dr. H.

32. *Thomas, supra* note 13, at ¶ 7, at 203.

33. See part II of the text.

34. *Boardman Co. v. Eddy*, 1961 OK 181, ¶ 3, 363 P.2d 821, 823.
 The term "idiopathy" is defined as "[a] self-originated injury or one of unknown causation." Dorland's Illustrated Medical Dictionary 660 (23rd ed.1951). Idiopathy is a morbid state of spontaneous origin. It is neither sympathetic nor traumatic. *Dorland's supra.* An idiopathic disease is one arising without apparent extrinsic cause. Stedman's Medical Dictionary 690 (5th ed.1982).

35. The term "prone" means "having a tendency, propensity, or inclination." Webster's Third New International Dictionary 1816 (3rd ed.1961).

36. Because we conclude there was competent evidence to support the trial tribunal's findings, we need not address claimant's final assertion—that even if her injury were the result of an idiopathic episode the harm would nonetheless be compensable.

## IV.

### SUMMARY

¶ 16 Claimant's knee strain is *ipso facto* an on-the-job injury. Once a claimant, as this one did here, has established a *prima facie* case, the burden shifts to the employer to refute the presence of a causal nexus between the worker's injury and her employment. To effectively refute this burden, employer must prove idiopathic harm is the sole cause of employee's injury. A mere legal conclusion of idiopathy is not enough. Employer's proof does not meet the required showing. There is competent evidence to support the order of the three-judge review panel. Our statutory duty *clearly* calls for its sustension.

¶ 17 On certiorari previously granted, COCA's opinion is vacated and the review panel's order is reinstated.

¶ 18 WINCHESTER, V.C.J. and LAVENDER, HARGRAVE, KAUGER, EDMONDSON, TAYLOR and COLBERT, JJ., concur.

¶ 19 WATT, C.J., dissents.