2008 OK CIV APP 53

**PUBLIC SUPPLY COMPANY and Old Republic Public Insurance Company, Petitioners/Appellants,**

v.

**Tim E. STEENBOCK and The Workers' Compensation Court, Respondents/Appellees.**

No. 104,265.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 25, 2008.

C. Scott Beuch, C. Scott Beuch & Associates, Oklahoma City, OK, for Petitioners.

David H. Bower, Bower & Bower, Oklahoma City, OK, for Respondent.

JERRY L. GOODMAN, Presiding Judge.

¶ 1 Employer, Public Supply Company, appeals the trial court's January 11, 2007, order awarding Employee, Tim Steenbock, more than eight (8) weeks of temporary total disability (TTD) benefits, arguing the order is in violation of 85 O.S.2001 and Supp.2006, § 22(3)(d). We review this legal issue *de novo,* conclude no error occurred, and sustain the order under review.

## FACTS

¶ 2 Employer denied Employee suffered a work-related cumulative trauma injury, as alleged in Employee's September 26, 2006, Form 3. A hearing was held on the issues of compensability of the injury, continued medical treatment, and the award of TTD benefits. All other issues, including the award of

permanent partial disability (PPD) benefits were reserved. Employer stipulated at trial that Employee was injured, but alleged as a defense the major cause of the injury was not work-related. In the event the trial court found Employee was entitled to TTD benefits, Employer contended those benefits were limited to eight-weeks' duration.

¶3 Employee's medical records and expert medical opinion were offered without objection by Employer, and Employer's expert medical opinion was admitted over Employee's probative value objection. The trial court found the cumulative trauma injury was job-related; found the cumulative trauma injury was aggravated by a specific injury occurring on September 7, 2006; denied Employer's major cause defense; awarded Employee TTD benefits for at least fifteen (15) weeks, not to exceed fifty-two (52) weeks; and ordered continued medical treatment be provided.

¶4 Employer appeals, raising a single legal issue: whether recent amendments to the workers' compensation laws regarding the award of benefits for a soft tissue injury reflect a legislative intent to limit those benefits to eight (8) weeks under these facts. We hold they do not and sustain the trial court's award.

## STANDARD OF REVIEW

¶5 The issue presented is one of statutory construction, which is a question of law. Therefore, we review the court's decision de novo, or without deference to the trial court's reasoning. *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶6, 16 P.3d 1120, 1122–23.

## THE STATUTES

¶6 At issue is the interpretation of the following two statutory-and allegedly conflicting-provisions: 85 O.S.2001 and Supp.2006, § 22(2)(c) and 85 O.S.2001 and Supp.2006, § 22(3)(d).

¶7 Section 22(2)(c) states:

Temporary Total Disability

. . .

With respect to injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a *maximum of one hundred fifty-six (156) weeks* in the aggregate except for good cause shown, as determined by the Court. Total payments of compensation for temporary total disability, inclusive of consequential injuries, may not exceed a *maximum of three hundred (300) weeks* in the aggregate. (Emphasis added.)

¶8 In apparent conflict, § 22(3)(d) was recently amended by the Legislature and now states:

Permanent Partial Disability.

. . .

With respect to injuries occurring on or after January 1, 2003, in case of disability, partial in character but permanent in quality, the compensation shall be seventy percent (70%) of the employee's average weekly wages, and shall be paid to the employee for the period prescribed by the following schedule:

. . .

*Soft Tissue Injury:* In case of a *nonsurgical soft tissue injury, temporary total compensation shall not exceed eight (8) weeks.* A claimant who has been recommended by a treating physician for surgery for a soft tissue injury may petition the Court for *one extension* of temporary total compensation and the court may order such an extension, *not to exceed sixteen (16) additional weeks,* if the treating physician indicates that such an extension is appropriate or as agreed to by all parties. In the event the surgery is not performed, the benefits for the extension period shall be terminated. For purposes of this section, "soft tissue injury" means damage to one or more of the tissues that surround bones and joints. "Soft tissue injury" includes, but is not limited to: sprains, strains, contusions, tendonitis, and muscle tears. *Cumulative trauma is to be considered a soft tissue injury.* "Soft tissue injury" does not include any of the following:

(1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, where corrective surgery is performed;

(2) Brain or closed-head injury as evidenced by:

1.  a. sensory or motor disturbances,

    b. communication disturbances,

    c. complex integrated disturbances of cerebral function,

    d. episodic neurological disorders, or

    e. other brain and closed-head injury conditions at least as severe in nature as any condition provided in subdivisions a through d of this division; or

(3) Total knee replacement.

*In all cases of soft tissue injury,* the employee shall *only* be entitled to appropriate and necessary medical care and temporary total disability as set out in *paragraph 2* of this section, *unless* there is *objective medical evidence of a permanent anatomical abnormality.* In determining the existence of such an abnormality, the Court may consider if there is credible medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired. (Emphasis added.)

## THE PARTIES' CONTENTIONS

¶ 9 Employer argues the two sections are in conflict because § 22(2)(c) is a general statutory provision permitting an injured party to receive TTD benefits up to a maximum of three hundred (300) weeks, while § 22(3)(d) is a specific statute limiting TTD benefits for soft tissue injuries to eight (8) weeks. Employer argues the specific governs the general and the trial court erred when it awarded more than eight (8) weeks of disability. Employer cites this Court's recent opinion in *Sysco Food Service of Oklahoma v. Cunningham,* 2007 OK CIV APP 52, 162 P.3d 973, as authority.

¶ 10 Employee argues the conflict between these two provisions was resolved by other divisions of the Court of Civil Appeals (COCA) in *Gee v. All 4 Kids, Inc.,* 2006 OK CIV APP 155, 149 P.3d 1106 and *Curling v. City Chevrolet,* 2007 OK CIV APP 63, 164 P.3d 1141. In both those cases, COCA, using

rules of statutory construction, essentially ignored the eight-week language of § 22(3)(d) as being superseded by that same provision's later reference to the limits in § 22(2)(c). This is the construction that is now urged by Employee. Both parties contend the two statutes are in conflict and tender the issue to this Court for resolution.

## ANALYSIS

¶ 11 We first hold Employer has waived any error on appeal regarding the fact of Employee's injury, his status as being temporarily totally disabled, or his need for surgical intervention. Employee's medical report, admitted into evidence without objection, stated that "he is certainly a surgical candidate for both the cervical spine, lumbar spine, right hand and left hand." His treating physician then referred him to a surgeon for further treatment. As of the date of the filing of this appeal, it appears surgery has not been performed. The trial court found that:

> [A]s a result of said injury, claimant has been temporarily totally disabled and ... is ... in need of further medical treatment, care and attention.... Compensation is due [for] 15 weeks and 2 days ... not to exceed 52 weeks from the date of this order.

¶ 12 The trial court reserved the issue of PPD. Thus, the trial court found that Claimant has suffered a soft tissue injury, is temporarily totally disabled, is a surgical candidate, has not reached maximum medical improvement (MMI), and is not entitled to PPD benefits at this time.

## CONFLICTING AUTHORITIES

¶ 13 As mentioned above, there are three published COCA opinions cited by the parties addressing this precise issue. All three have held the eight-week limit is inapplicable, though that result is reached by two different analysis.

¶ 14 In *Gee* and *Curling,* those COCA divisions interpreting § 22(2)(c) and § 22(3)(d) held that:

The eight-week limit of § 22(3)(d) directly conflicts with the 300-week limit of § 22(2)(c).

As a matter of statutory construction, we must construe the various provisions as a harmonious whole if possible. *See, e.g., City of Tulsa v. Smittle*, 1985 OK 37, ¶ 12, 702 P.2d 367, 370. "In construing a statute, the whole must be considered and all parts given their obvious intended meaning, and no part stricken down, unless in irreconcilable conflict with the remainder." *Earnest, Inc. v. LeGrand*, 1980 OK 180, ¶ 6, 621 P.2d 1148, 1151. More importantly, "if it be considered that there is a conflict between one provision of a section of statu[t]e and another, one matter to consider is that the last in order or position and arrangement possibly should prevail." *Id.*

Section 22(3)(d) first imposes an eight-week limit on soft tissue injuries, but then specifies that, "[i]n *all* cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and *temporary total disability* as set out in" § 22(2)(c), which permits aggregate TTD benefits of up to three hundred weeks. In our view, the provisions of §§ 22(2)(c) and 22(3)(d), adopted in the same legislative session, cannot be reconciled without resort to the rules of statutory construction.

Because § 22(3) is last in position, and the reference to § 22(2) is last in subsection 3, we hold that the reference of § 22(3) to § 22(2) controls, and that § 22(2) permits an aggregate award of up to three hundred weeks of TTD in soft tissue cases. As applied in the present case, the uncontroverted medical evidence demonstrated Claimant's TTD from and after the date of the injury and continuing until completion of rehabilitation. As we construe § 22(2) and (3), the trial court was not constrained by § 22(3) to award a maximum of eight weeks TTD for Claimant's soft tissue back injury, but was statutorily authorized to award TTD to the extent allowed by § 22(2).

*Gee*, at ¶¶ 10–13, 149 P.3d at 1109–10; *Curling*, at ¶¶ 7, 9, 164 P.3d at 1143 (footnotes omitted).

¶ 15 Thus, the determination that the eight-week limit was a legal nullity was based upon a rule of statutory construction that suggested that the last provision adopted by a legislative body in a series of provisions would prevail over earlier, conflicting language contained in the same passage. We note the dissent in *Curling* pointed out that the construction "rule" used in *Gee* and *Curling* was less a hard and fast axiom as much as a suggested guideline to interpretation. *See, Earnest, Inc. v. LeGrand*, 1980 OK 180, 621 P.2d 1148. *Gee* and *Curling* support Employee's position and the trial court's order.

¶ 16 This Court, in *Sysco*, was asked the same legal question, albeit under slightly different facts. In *Sysco*, the employee suffered soft tissue injury to his shoulder, and had undergone surgical repair. The trial court awarded more than twenty-four (24) weeks of benefits, an action the employer appealed. This Court affirmed the trial court and cited *Gee* without comment. However, we made the following observation:

Even if the *Gee* Court's conclusion were incorrect, we would still reach the same result here. Section 22(3)(d) provides that a claimant with "nonsurgical" soft tissue injuries is limited to eight weeks of benefits, and a claimant "who has been recommended" for surgery by a treating physician may receive one 16-week extension, but if surgery is not performed then the benefits for the extension period shall be terminated. *The statutory language fails to specifically address or limit available TTD benefits after a claimant has surgery.* In this case, Claimant had surgery.

*Id.* at ¶ 12, 162 P.3d at 975 (emphasis added). We went on to hold:

Employer asserts that the § 22(3)(d) language authorizing one 16-week extension for a surgical injury shows legislative intent to put a 24-week cap on cases where surgery is performed. We disagree. A more reasonable view is that § 22(3)(d)'s failure to specifically address *post-surgical* claimants means that the subsection was

not intended to disturb the § 22(2) benefit period. This construction is reinforced by § 22(3)(d)'s later reference to § 22(2) benefits. *In other words, a more logical construction is that § 22(3)(d) is intended to give claimants who have sustained non-surgical injuries eight weeks of benefits, claimants who have been recommended for surgery an additional 16 weeks of benefits between the time surgery is recommended and the time it is performed or declined, and claimants who have received surgery up to 300 weeks of benefits in accordance with § 22(2).*

*Id.* at ¶ 13, 162 P.3d at 975 (italics in original) (emphasis added).

¶ 17 Upon reconsideration of this issue under slightly different facts, we now refine our analysis.

## HARMONIZING THE CONFLICTING AUTHORITIES

¶ 18 The effect of interpreting the two statutes using the approach taken in *Gee, Curling,* and *Sysco,* to the degree that it relies on *Gee,* renders § 22(3)(d) meaningless. By using this approach, the intent of the Legislature to limit the PPD award for a soft tissue injury to between eight-to-twenty-four weeks' compensation is frustrated. Keeping in mind the purpose of statutory construction is to harmonize conflicting provisions, we proceed with the following interpretive analysis.

¶ 19 We first note § 22(3)(d)'s "soft tissue injury" provision is not placed in § 22(2)'s provisions regarding TTD awards, but is located in that section dealing with specific injuries such as a hernia, loss of use of an eye, a finger or other member, and deafness. Those specific injuries are deemed to be permanent and partial in nature, and are compensated either by a fixed dollar amount or for a fixed period of time, which is measured using TTD rates. As this Court recently held in *Urrutia v. Wendy's Old Fashioned Hamburgers,* 2007 OK CIV APP 104, 171 P.3d 915, this was done for a reason. In *Urrutia,* we held:

By placing the "Soft Tissue Injury" provision in paragraph 3 of section 22, immediately following the Hernia provision, and providing compensation for soft tissue injury that is strikingly similar to the compensation provided for hernia injuries, we find the legislature intended for soft tissue injury to be compensated as a "specific injury" and "the special grant of an award for [such] injuries [to be] exclusive of other provisions of the Workers' Compensation Act as to temporary disability." *Speer [v. Petrolite Specialty Polymers Group],* 1996 OK CIV APP 55, ¶ 12, 918 P.2d [92] at 94 (citation omitted). The exclusive nature of the compensation provided for special injuries in § 22(3) controls even when evidence establishes a period of temporary total disability far in excess of the period provided for a particular special injury. *Knight v. Allied Signal,* 1999 OK CIV APP 21, ¶ 10, 977 P.2d 373, 375.

*Id.* at ¶ 5, 171 P.3d at 916, 917. *Urrutia* implicitly rejects the analysis used in *Gee* and *Curling* because *Urrutia* presumes the constitutionality of § 22(3)(d), does not ignore it completely, and recognizes the Legislature's effort to establish an additional category of compensable specific injuries.

¶ 20 Proceeding from the recognition that § 22(3)(d) is neither unconstitutional nor conflicting with existing statutes, we conclude the nature of the award sought determines the remedy awarded. By adding a "soft tissue injury" to the list of specific injuries to be compensated at a fixed rate for purposes of PPD, and yet leaving intact those provisions permitting more extensive TTD awards for a soft tissue injury, the Legislature intended that a claimant with an injury may receive TTD benefits as part of the recuperative period pursuant to § 22(2). However, once the healing period has ended, the Legislature intended to limit the claimant's award of PPD benefits for soft tissue injuries as follows.

¶ 21 A claimant seeking temporary total disability benefits for an injury, including a soft tissue injury, under 85 O.S.2001 and Supp.2006, § 22(2)(c), may, upon proper proof, be entitled to those benefits listed for a maximum of three hundred (300) weeks. A claimant's TTD award is in no way limited by the provisions of § 22(3)(d); those limits only

apply when seeking PPD benefits for a "Soft Tissue Injury" as that injury is defined in § 22(3)(d).[1]

¶ 22 When a claimant reaches MMI, or is otherwise no longer considered to be temporarily totally disabled, and who now seeks PPD benefits, such claimant may seek, in addition to his § 22(2)(c) TTD benefits, PPD benefits for a soft tissue injury. A "soft tissue injury" is now classified as a specific type of injury for purposes of a PPD award and is now compensated at a fixed rate, similar to those awards for a hernia or loss of a body member. *See* § 22(3)(d). The amount of such award is determined by the following analysis.

¶ 23 Though we have earlier set out § 22(3)(d) in its entirety above, this provision, distilled to its essence, provides as follows:

- Soft Tissue Injury: In case of a nonsurgical soft tissue injury, temporary total compensation shall not exceed eight (8) weeks.
- A claimant who has been recommended by a treating physician for surgery for a soft tissue injury may petition the Court for one extension of temporary total compensation and the court may order such an extension, not to exceed sixteen (16) additional weeks....
- In all cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and temporary total disability as set out in paragraph 2 of this section,
- unless there is objective medical evidence of a permanent anatomical abnormality....

¶ 24 A different sequencing of these clauses as an aid to interpretation renders this section more understandable.

¶ 25 Unless "there is objective medical evidence of a permanent anatomical abnormality" as defined in § 22(3)(d), a claimant with a soft tissue injury receives no PPD benefits, and his compensation is limited to the necessary and reasonable medical treatment he has received to date, plus the amount of TTD

benefits previously awarded under § 22(2)(c). This is so because:

> In *all* cases of soft tissue injury, the employee shall *only* be entitled to appropriate and necessary medical care and temporary total disability as set out in paragraph 2 [§ 22(2)(c)] of this section *unless* there is objective medical evidence of a permanent anatomical abnormality.... (Emphasis added.)

¶ 26 If, however, a claimant's soft tissue injury results in a "permanent anatomical abnormality" as defined in § 22(3)(d), PPD benefits are no longer limited only to "necessary medical care and temporary total disability" under § 22(2)(c). When an injury reflecting a "permanent anatomical abnormality" exists, the next question to be asked is this: was surgery performed or recommended to be performed as treatment for this injury? If no surgery was performed and none is recommended or scheduled, the claimant is limited to a PPD award consisting of eight (8) weeks' benefits calculated at his TTD rate ("In case of a nonsurgical soft tissue injury, temporary total compensation shall not exceed eight (8) weeks."), plus the necessary and reasonable medical treatment completed to date, plus the TTD benefits awarded him under § 22(2)(c). In short, the restrictions limiting PPD benefits to only medical treatment and TTD benefits under § 22(2)(c) are lifted once a permanent anatomical abnormality is proven.

¶ 27 If, however, surgery on the soft tissue injury was performed, or is recommended to be performed, a claimant may receive sixteen (16) additional weeks of compensation, for a total of twenty-four (24) weeks, measured by his TTD rate, as his award of PPD benefits. This amount is in addition to the necessary and reasonable medical treatment to date, plus the TTD benefits awarded him under § 22(2)(c).

¶ 28 Comparing this analysis to that used in both *Gee* and *Curling*, the claimants suffered soft tissue injuries and had not reached MMI. They sought TTD benefits under § 22(2)(c), but the trial court awarded only

---

1. This principle was recognized in this Court's recent non-published opinion, styled *Binger* *Nursing Home v. Cox*, Appeal No. 103,830, issued October 12, 2007.

eight (8) weeks of benefits under § 22(3)(d). COCA vacated the orders and ordered benefits consistent with § 22(2)(c), using the analysis recited in their opinions. While we agree with that result, we disagree with their analysis. Under our analysis, those claimants would be awarded the same benefits without concluding the statutes were in conflict, without ignoring one provision at the expense of another, and still recognizing the validity and presumed constitutionality of § 22(3)(d).

¶ 29 In *Sysco*, we sustained the trial court's award of one hundred fifty-six (156) weeks of TTD benefits awarded under § 22(2)(c), partially for the reason that unlike the claimants in *Gee* and *Curling*, the *Sysco* claimant had undergone surgery, and partially for the reason that *Sysco's* claimant was not seeking PPD, but rather TTD benefits. We were not presented the issue of the amounts of PPD to which that claimant may be entitled because that issue was not before this Court. The language discussing the prospective benefits available to the post-surgical claimant under the PPD provisions in § 22(3)(d) is dictum. It is instructive in that it highlights a deficiency in the statutory language chosen, but does not directly affect the issue tendered in *Sysco*, nor the issue tendered to us today.

### SUMMARY

¶ 30 To summarize, a claimant seeking TTD benefits for a soft tissue injury under 85 O.S.2001 and Supp.2006, § 22(2)(c) may, upon proper proof, be entitled to those benefits listed therein for a maximum of three hundred (300) weeks. A claimant's TTD award is in no way limited by the provisions of § 22(3)(d), which only apply when seeking PPD benefits for a "Soft Tissue Injury" as that injury is defined in § 22(3)(d).

¶ 31 When a claimant reaches MMI, or is otherwise no longer considered to be temporarily totally disabled, and who now seeks PPD benefits, such claimant may seek, in addition to his § 22(2)(c) TTD benefits, PPD benefits for a soft tissue injury. A "soft tissue injury" is now classified as a specific type of injury for purposes of measuring a PPD award and is now compensated at a fixed rate, similar to those awards for a hernia or loss of a body member. *See* § 22(3)(d). The amount of such award is determined by the following analysis.

¶ 32 If a claimant's soft tissue injury does not result in a "permanent anatomical abnormality" as defined in § 22(3)(d), he receives no PPD benefits, and his compensation is limited to the necessary and reasonable medical treatment he has received to date, plus the amount of TTD benefits previously awarded under § 22(2)(c).

¶ 33 If a claimant's soft tissue injury results in a "permanent anatomical abnormality" as defined in § 22(3)(d), the next question to be asked is this: was surgery performed or recommended to be performed as treatment for this injury? If no surgery was performed and none is recommended or scheduled, the claimant is limited to a PPD award consisting of eight (8) weeks' benefits calculated at his TTD rate, plus the necessary and reasonable medical treatment completed to date, plus the TTD benefits awarded him under § 22(2)(c).

¶ 34 If, however, surgery on the soft tissue injury was performed, or is recommended to be performed, a claimant may receive sixteen (16) additional weeks of compensation, for a total of twenty-four (24) weeks, measured by his TTD rate, as his award of PPD benefits. This amount is in addition to the necessary and reasonable medical treatment to date, plus the TTD benefits awarded him under § 22(2)(c).

¶ 35 This analysis recognizes the Legislature's intent to limit the amount of PPD benefits for soft tissue injuries without eviscerating the chosen statutory language completely, as was done in *Gee* and *Curling*. To the extent our analysis here differs from those cases, we agree with their result but for totally different reasons.

¶ 36 In conclusion, the trial court awarded Claimant TTD benefits under § 22(2)(c), and was not limited to the benefits set out for

PPD under § 22(3)(d). We find no error, and the trial court's award is sustained.

¶ 37 SUSTAINED.

WISEMAN, J., and FISCHER, J., concur.