2010 OK CIV APP 50

**Edith Jane WILCOXSON,
Petitioner/Appellant,**

v.

**WOODWARD COUNTY EMS,** Compsource Oklahoma and the Oklahoma Workers Compensation Court, Respondents/Appellees.

**No. 106,678.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

April 8, 2010.

Daniel J. Talbot, Halley & Talbot, Oklahoma City, OK, for Petitioner/Appellant.

Timothy E. Lurtz, Collins, Zorn & Wagner, Oklahoma City, OK, for Respondents/Appellees Woodward County EMS and Compsource Oklahoma.

OPINION BY DEBORAH B. BARNES, Presiding Judge.

¶ 1 Edith Jane Wilcoxson (Claimant) seeks review of an order of a three-judge panel of the Workers' Compensation Court, filed on December 10, 2008, affirming in part and modifying in part the trial court's order, which awarded Claimant eight weeks of temporary total disability (TTD) benefits for a neck injury she sustained while employed by Woodward County EMS (Employer). Based on our review of the record and applicable law, we sustain the three-judge panel's order.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On May 17, 2006, while working as a medic for Employer, Claimant sustained injuries when she transferred a "morbidly obese patient from gurney to bed."[1] Claimant received medical therapies and treatment for her lower back for several months, but ultimately underwent surgery on May 5, 2007[2] on her lumbar spine. Michael Wright, M.D. (Dr. Wright) stated in his report, dated November 21, 2007, that Claimant reached maximum medical improvement from "surgical intervention and post-operative rehabilitation" as to her lumbar spine on November

---

1. Record (R.), p. 3. At the September 9, 2008, hearing, Claimant stated that she and another Woodward County EMS employee were delivering a patient, who weighed about 400 pounds, to a nursing home. When they arrived at the patient's room (with the patient on a gurney), a nursing home resident in a room next door "quit breathing." The other employee left and went next door, and Claimant, all on her own, moved the 400-pound patient from the gurney to a bed using a "sheet lift." Claimant asserted she immediately had a sharp pain in her lower back which worsened over time. Transcript (Tr.), pp. 7-8.

2. R., p. 18.

**1173**

21, 2007.[3] On December 27, 2007, Claimant filed her Form 3, alleging she sustained a work-related injury to her low back, both hips, right leg, right foot, and whole body, with an anatomic abnormality.

¶ 3 On July 17, 2008, Claimant filed an amended Form 3, adding a claim for a neck injury. The medical evidence of record as to Claimant's neck includes written reports by several physicians. For example, according to the April 9, 2008, written report[4] of Claimant's physician, J. Arden Blough, M.D. (Dr. Blough), Claimant had "increasing pain in her back and pain in her neck" after her work-related injury on May 17, 2006. Dr. Blough further stated that her low back and neck symptoms continued to worsen "over the following months." On March 8, 2007, she was referred for an MRI of her neck (cervical spine), which indicated "disc bulges." Her neck pain, according to Dr. Blough, continues and her range of motion is "restricted in all planes." Dr. Blough's opinion, contrary to the opinion of Dr. Wright,[5] is that Claimant is and has been temporarily totally disabled since May 17, 2006, and will remain so for an "undetermined amount of time pending further medical evaluation and treatment" of her cervical and lumbar spine.[6]

¶ 4 Employer's expert, John A. Munneke, M.D., D.D.S., made findings to the contrary.

As stated in his July 23, 2008, written report, Claimant "at this time exhibits no objective evidence of disability or impairment to her cervical spine as a result of her accident. . . ."[7]

¶ 5 The trial court held a hearing on September 9, 2008, on the issue of TTD only. For the first time, Employer raised the defense of statute of limitations, contending more than two years had elapsed between the neck injury and the filing of a claim for the neck injury, and thus a claim for benefits for a neck injury was untimely. The trial court entered an order, filed on September 15, 2008, denying Employer's statute of limitations defense and finding that Claimant had sustained an accidental personal injury, arising out of and in the course of her employment, to her lumbar back and neck, and that the neck injury entitled her to a maximum of eight weeks of TTD benefits.[8] The issue of permanent partial disability benefits was reserved for a future hearing, and there is no evidence in the record[9] indicating that Claimant had surgery on her neck or that any physician recommended neck surgery.

¶ 6 Both parties filed a Request for Review on September 25, 2008, seeking review of the trial court's order by a three-judge panel. Claimant asserted the statute of limitation defense was not only tolled, but waived as

3. R., p. 93.

4. R., pp. 17–21.

5. R., pp. 92–93, report of Michael Wright, M.D., dated November 21, 2007.

6. R., p. 20.

7. R., p. 80.

8. Paragraph 5 of the order states "THAT as a result of said injury, claimant is entitled to compensation for a maximum of 8 [sic] for injury to the NECK in the total amount of $3,003.84." In accord with both parties, we interpret this paragraph to mean the trial court awarded Claimant "a maximum of 8 [weeks]" of TTD benefits.

9. Claimant's counsel argues that "[t]his case is not a 'soft tissue injury' case as defined in Title 85 O.S. Section 22(3)(d) as corrective surgery to the neck, in the form of an epidural steroid injection was recommended." Claimant's Brief-in-chief, p. 3. Similarly, Claimant's counsel stated at the hearing that "[t]here's been a recommendation of epidural steroid injections, which would be considered surgery." Tr., p. 31. We disagree with Claimant that an epidural steroid injection is a surgical procedure. An injection— "[t]he introduction of a medicinal substance . . . into a part of the body . . . by a needle and syringe or by a syringe"—is not a surgery—a treatment involving "manual adjustment (as the setting of a broken bone), the use of mechanical appliances (as braces), or operative procedures (as the cutting into the body)." J.E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE AND WORD FINDER (1991). See also Lumbar Epidural Steroid Injections for Low Back Pain and Sciatica by Richard Staehler, M.D., at www.spine-health.com (epidural steroid injections are "an integral part of the non-surgical management of sciatica and low back pain.").

never raised or pled prior to the date of trial, and that the eight-week TTD award was erroneous. Employer asserted its statute of limitation defense was valid, that Claimant suffered no job-related injury to her neck, and that Claimant should not be awarded any TTD benefits or medical treatment for her neck.

¶ 7 In an order filed on December 10, 2008, a three-judge panel modified in part and affirmed in part the trial court's order. It found that Employer "failed to plead the Statute of Limitations defense prior to trial and the defense is waived." [10] The three-judge panel also found that Claimant's amended Form 3, adding the neck, was timely filed. The rest of the trial court's order—including the eight-week TTD benefit award—was affirmed.

¶ 8 Claimant seeks this Court's review, alleging the three-judge panel erroneously affirmed the trial court's award of only eight weeks of TTD benefits. We sustain.

## STANDARD OF REVIEW

■■■■ ¶ 9 When this Court examines a Workers' Compensation Court's factual findings, we apply the any competent evidence standard of review. *Sneed v. McDonnell Douglas*, 1999 OK 84, 991 P.2d 1001 (citing *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548). Under the any competent evidence standard, this Court must simply "canvass the facts, not with an object of weighing conflicting proof to determine where the preponderance lies, but only for the purpose of ascertaining whether those facts support the tribunal's decision." *Okla-*

*homa Gas & Electric Co. v. Black*, 1995 OK 38, ¶ 6, 894 P.2d 1105, 1107 (citation omitted). "Record proof, on the basis of which the trier could have reached a contrary conclusion, has no legal impact upon the review process by which a workers' compensation court's finding is tested. It is only the absence of competent evidence that makes a tribunal's decision erroneous (as a matter of law) and hence amenable to appellate vacation." *Pauls Valley Travel Center v. Boucher*, 2005 OK 30, ¶ 6, 112 P.3d 1175, 1179–1180 (footnotes omitted). *Huffman v. General Motors Corp.*, 1991 OK CIV APP 17, ¶ 6, 811 P.2d 106, 108, citing *Parks*, notes that the trial judge's decision, once altered by the three-judge panel's reexamination, loses its viability and stands replaced by the decision which altered it. The three-judge panel's decision then becomes the order in the case and the only one subject to review by this Court.

[4] ¶ 10 Questions of law are reviewed *de novo* by this Court. *American Airlines v. Hervey*, 2001 OK 74, ¶ 11, 33 P.3d 47, 50. Under this standard, we have plenary, independent and non-deferential authority to determine whether the lower court erred in its legal rulings. *Id.*

## ANALYSIS

### I. Application of 85 O.S. Supp.2005 § 22(3)(d)

■■■ ¶ 11 Claimant argues that her injury is not subject to the eight-week "nonsurgical soft tissue injury" limitation found in 85 O.S. 2001 and Supp.2005 § 22(3)(d),[11] and, therefore, limiting her TTD benefits to eight weeks was contrary to law. We disagree.

---

Therefore, a recommendation of an epidural steroid injection is not a recommendation of surgery.

10. R., p. 114.

11. A "soft tissue injury" and the eight-week limitation of temporary total disability benefits for a nonsurgical soft tissue injury are set forth in 85 O.S. Supp.2005 § 22(3)(d) as follows, in pertinent part:

Soft Tissue Injury: In case of a nonsurgical soft tissue injury, temporary total compensation shall not exceed eight (8) weeks. A claimant

who has been recommended by a treating physician for surgery for a soft tissue injury may petition the Court for one extension of temporary total compensation and the court may order such an extension, not to exceed sixteen (16) additional weeks, if the treating physician indicates that such an extension is appropriate or as agreed to by all parties. In the event the surgery is not performed, the benefits for the extension period shall be terminated. For purposes of this section, "soft tissue injury" means damage to one or more of the tissues that surround bones and joints. "Soft tissue injury" includes, but is not limited to: sprains, strains, contusions, tendoni-

¶ 12 The three-judge panel affirmed the trial court's award of eight weeks of TTD for injury to Claimant's neck. The record reveals that Claimant's neck injury occurred to her cervical spine and, specifically, to the spinal disks in her cervical spine.[12] Section 22(3)(d) states that " '[s]oft tissue injury' *does not include* any of the following: (1) Injury to or disease of the spine, *spinal disks*, spinal nerves or spinal cord, *where corrective surgery is performed....*" (Emphasis added.) In other words, the legislature *specifically excluded* from the definition of soft tissue injury injuries to the spinal disks where corrective surgery *is* performed. "[T]he Legislature will not be presumed to have done a· vain and useless act in the promulgation of a statute, nor will an inept or incorrect choice of words be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment." *Wylie v. Chesser,* 2007 OK 81, ¶ 19, 173 P.3d 64, 71 (quoting *TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15). Therefore, the obvious import of this exclusionary language is that the legislature intended to *include* within the definition of soft tissue injury those injuries to the spinal disks where corrective surgery is *not* performed.[13] Therefore, because corrective surgery was not performed to Claimant's neck,[14] the injury is included within the definition of a soft tissue injury.

¶ 13 In *Bed Bath & Beyond v. Bonat,* 2008 OK 47, ¶ 12, 186 P.3d 952, 955, the Oklahoma Supreme Court stated in relevant part: "Section 22(3)(d) limits benefits to eight weeks for nonsurgical soft tissue injuries." Therefore, the eight-week TTD award was properly made pursuant to the nonsurgical soft tissue injury limitation set forth in § 22(3)(d) and *Bed Bath & Beyond v. Bonat.*

## II. Specificity

¶ 14 Claimant next argues that because the three-judge panel awarded eight weeks of TTD benefits without, stating whether the award was being made pursuant to the soft tissue injury limitation under § 22(3)(d), the three-judge panel's order lacks the specificity required by 85 O.S. Supp.2005 § 26(B).[15]

¶ 15 Where the findings of fact and conclusions of law are too indefinite and uncertain for judicial interpretation, this Court, on appeal, will vacate the order for further proceedings. *Dunkin v. Instaff Personnel,* 2007 OK 51, ¶ 14, 164 P.3d 1057, 1061. However, "[m]eaningful review is facilitated" by an order of the Workers' Compensation Court where "the specific basis for its decision ... can be determined." *Dunkin,* at ¶ 15, 164 P.3d at 1061. The order must be certain enough to (1) identify the

---

tis, and muscle tears. Cumulative trauma is to be considered a soft tissue injury. "Soft tissue injury" does not include any of the following:
 (1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, where corrective surgery is performed;
 . . . .
 In all cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and temporary total disability as set out in paragraph 2 of this section, unless there is objective medical evidence of a permanent anatomical abnormality....

12. Claimant was referred for an MRI scan of the cervical spine in March 2007. She was also referred for multiple MRI scans of the lumbar spine. According to the report on Claimant's medical history provided by Dr. Blough, these MRIs reveal that Claimant's injuries occurred to her spinal disks, i.e., between the specific vertebrae in the cervical and lumbar regions of the spine—in C3–4, C4–5, C5–6, C6–7, and L2–3, L4–5, L5–S1. *See* R., p. 18. In the "Assessment"

section of Dr. Blough's report, he states in relevant part that Claimant has "[a]cute traumatic injury to the cervical spine resulting in radiculopathy due to anatomical abnormalities from disc bulges at C3–4, C4–5, C5–6, and C6–7." R., p. 20.

13. Otherwise, the Legislature would have performed a vain and useless act by excluding from the definition of soft tissue injury a subset (spinal injuries where surgery is performed) of an already excluded set (spinal injuries).

14. Although surgery was performed on Claimant's lumbar spine after the injury, no surgery was performed on Claimant's cervical spine (or neck). The court below awarded TTD only for Claimant's neck injury.

15. Section 26(B) states, in part:
 The Court ... shall make or deny an award determining such claim for compensation ... together with the statement of its conclusion[s] of fact and rulings of law.

legal theory relied upon and (2) be sufficiently specific to enable the reviewing court to ascertain the facts on which the order is based. *Id.*

¶ 16 As detailed in the preceding section, the order is sufficiently specific for this Court to ascertain the facts on which it is based—i.e., that Claimant's neck injury is a nonsurgical soft tissue injury to her cervical spinal disks. Furthermore, the legal theory relied upon by the court below is readily identifiable: the court below awarded Claimant *exactly* eight weeks of TTD for her neck injury. Only § 22(3)(d) applies to TTD awards for nonsurgical soft tissue injuries, and it limits the TTD award for these injuries to eight weeks. *Bed Bath & Beyond v. Bonat,* 2008 OK 47, 186 P.3d 952. We find the specific basis of the award can be readily determined and, therefore, that meaningful review is facilitated by the order. We find the order does not lack the specificity required by 85 O.S. Supp.2005 § 26(B).

### III. Competent Evidence

 ¶ 17 Claimant argues the eight-week TTD award should be vacated as not supported by competent evidence. We disagree.

¶ 18 The competent evidence available in the record on the issue of TTD is as follows: first, Employer's experts, Drs. Wright and Munneke, made findings that Claimant had no evidence of disability or impairment to her cervical spine as a result of her job-related injury. However, in finding that Claimant was temporarily totally disabled, the court below obviously rejected these findings. Second, Dr. Blough's opinion is that Claimant is and has been temporarily totally disabled since May 17, 2006, and will remain so for an "undetermined amount of time pending further medical evaluation and treatment" of her cervical and lumbar spine.

¶ 19 The award of eight weeks of TTD is supported by Dr. Blough's opinion. Although it does not exactly correspond to his opinion regarding the length of TTD, the court below, as stated above, was limited by the eight-week limitation set forth in § 22(3)(d) and *Bed Bath & Beyond v. Bonat.*

### CONCLUSION

¶ 20 For the reasons set forth, we sustain the order of the three-judge panel.

¶ 21 **SUSTAINED.**

WISEMAN, C.J., concurs, and GOODMAN, J., dissents.

GOODMAN, J., dissenting.

¶ 1 I dissent for the reasons set forth in *Public Supply Co. v. Steenbock,* 2008 OK CIV APP 53, 186 P.3d 263.