2011 OK CIV APP 95

**CITY OF MIDWEST CITY, Petitioner,**

v.

**Cynthia Ann MADDUX and the Workers' Compensation Court, Respondents.**

No. 108,129.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 29, 2011.

Rehearing Denied June 24, 2011.

William Archibald, Oklahoma City, OK, for Petitioner.

John Kord Hammert, Oklahoma City, OK, for Respondent.

LARRY JOPLIN, Judge.

¶1 Petitioner City of Midwest City (Employer) seeks review of an order of a three-judge panel of the Workers' Compensation Court which affirmed the trial court's order granting benefits to Respondent Cynthia Ann Maddux (Claimant) for injuries to her neck and shoulder. In this proceeding, Employer challenges the order as unsupported by competent evidence.

¶2 Claimant worked for Employer as a police officer. By Form 3, Claimant alleged injuries to her neck and right shoulder arising out of and in the course of her employment with Employer. For treatment of her injuries, Claimant's physicians performed arthroscopic surgery on her right shoulder and administered an epidural steroid injection to her neck.

¶3 At trial, Claimant offered, and the trial court admitted, the medical report of an examining physician, Dr. McClure, without objection by Employer. Dr. McClure opined that Claimant had sustained twenty-seven (27) percent permanent partial impairment to the neck [1] and forty-four (44) percent perma-

---

1. Concerning the neck injury, Dr. McClure stated in his report:

    My opinion, as to permanent impairment of the cervical spine is as follows: There is four (4) percent for loss of range of motion, seven (7) percent for loss of sensation and dysesthe-

    sia, ten (10) percent for headaches, and six (6) percent for one injured disc without surgery. This comes to twenty-seven percent permanent partial impairment to the body as a whole, due to the injury to the cervical spine.

nent partial impairment to the right shoulder, causally related to injuries sustained in the course of her employment.

¶ 4 In opposition to the claim, Employer offered the deposition and report of its examining physician, Dr. Munneke. Dr. Munneke found no permanent impairment of the neck and fifteen (15) percent permanent partial impairment of the right shoulder.

¶ 5 On consideration of the testimony and evidence, the trial court held for Claimant:

> THAT on NOVEMBER 23,2003, claimant was employed by the [Employer] ...; on said date [C]laimant sustained accidental personal injury to the NECK and RIGHT SHOULDER arising out of and in the course of the [C]laimant's employment.
> ...
>
> THAT as a result of said injury, [C]laimant sustained 30 percent permanent partial disability to the RIGHT SHOULDER (SURGERY–LOSS OF MUSCLE STRENGTH–LOSS OF SENSATION & DYSESTHESIA–LOSS OF RANGE OF MOTION) and 13 percent permanent partial disability to the NECK (SURGERY–EPIDURAL STEROID INJECTION–LOSS OF RANGE OF MOTION–LOSS OF SENSATION & DYSESTHESIA–HEADACHES–INJURED DISC), for which [C]laimant is entitled to compensation....

Employer appealed, and a three-judge panel unanimously affirmed the trial court's order as neither contrary to law nor against the clear weight of the evidence.

¶ 6 Employer now seeks review in this Court. Employer asserts the epidural steroid injection to Claimant's neck does not constitute "surgery," and, since Claimant's physician discerned only six percent permanent partial impairment "for one injured disc without surgery," the award for 13% PPD to the neck is excessive. Without citation of authority, Employer also complains the award for 30% PPD to the shoulder is exces-

sive, considering the minimally invasive nature of, and the rapid recovery from, the arthroscopic shoulder surgery.

¶ 7 Claimant sustained her on-the-job injury on or about November 23, 2003. The law in effect at the time of the injury controls, so, notwithstanding the amendments of 85 O.S. § 3.6, effective November 1, 2009, we canvass the record for any competent evidence to support the lower court's Order. *Dunlap v. Multiple Injury Trust Fund,* 2011 OK 14, 249 P.3d 951.

¶ 8 The phrase, "permanent impairment," "means any anatomical abnormality after maximum medical improvement has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made." 85 O.S. Supp.2006 § 3(19). "Any examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the injury...." *Id.*

¶ 9 As to the award of PPD for the injury to Claimant's right shoulder, Dr. McClure discerned a total of 44% permanent partial impairment. The mere difference in Dr. McClure's rating and Dr. Munneke's rating does not render Dr. McClure's ratings excessive *per se,* and the Workers' Compensation Court may grant an award within the range of disability established by the medical evidence.

¶ 10 However, neither Dr. McClure nor Dr. Munneke expressed any opinion establishing the existence of permanent partial impairment on account of any "surgery-epidural steroid injection" to the neck. To the contrary, in fact, Dr. McClure discerned permanent partial impairment of 6% "for one injured disc *without* surgery," and an epidural steroid injection is not considered a "surgical" procedure. *Wilcoxson v. Woodward County EMS,* 2010 OK CIV APP 50, ¶ 5, 231 P.3d 1170.[2] (Emphasis added.)

---

Dr. McClure testified at deposition that he evaluated the neck injury according to the AMA Guides.

2. "Claimant's counsel argues that '[t]his case is not a "soft tissue injury" case as defined in Title

85 O.S. Section 22(3)(d) as corrective surgery to the neck, in the form of an epidural steroid injection was recommended.' Claimant's Brief–in–Chief, p. 3. Similarly, Claimant's counsel stated at the hearing that '[t]here's been a recom-

¶ 11 In short, Dr. McClure's testimony, the sole evidence finding PPD for the neck injury, supports an award of only six (6) percent PPD for the one injured cervical disc. Employer seeks remand for entry of an order granting six percent PPD to the neck, and we hold such a remand is appropriate. That part of the order of the three-judge panel granting benefits for PPD to the right shoulder is SUSTAINED. That part of the order of the three-judge panel granting benefits for PPD to the neck is VACATED, and the cause REMANDED for entry of an order granting six percent PPD for the injury to Claimant's neck.

MITCHELL, P.J., and BUETTNER, J., concur.

mendation of epidural steroid injections, which would be considered surgery.' Tr., p. 31. We disagree with Claimant that an epidural steroid injection is a surgical procedure. An injection— '[t]he introduction of a medicinal substance ... into a part of the body ... by a needle and syringe or by a syringe'—is not a surgery—a treatment involving 'manual adjustment (as the setting of a broken bone), the use of mechanical appliances (as braces), or operative procedures (as the cutting into the body).' J.E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE AND WORD FINDER (1991). See also *Lumbar Epidural Steroid Injections for Low Back Pain and Sciatica* by Richard Staehler, M.D., at *www.spine-health.com* (epidural steroid injections are 'an integral part of the non-surgical management of sciatica and low back pain.') Therefore, a recommendation of an epidural steroid injection is not a recommendation of surgery."